## Texas & Pacific Railway Company v. John B. Slaughter.

### Decided January 14, 1905.

**1.—Cattle Shipment—Connecting Lines—Liability Properly Restricted.**

In an action for damages to cattle on a through shipment, brought against one line only, plaintiff having made a settlement with the other connecting lines, certain charges, set out in the opinion, held to properly restrict plaintiff's right of recovery of damages occurring on defendant's line and resulting from its negligence.

**2.—Same—Evidence—Market Sales.**

It was competent for a witness to testify that the cattle market in Kansas City was better early on a stated Monday morning than at any other time in the day, by showing that the market was generally better early in the morning than later in the day, the witness being familiar with the fact about which he thus testified.

**3.—Same—Delay of Several Lines Concurring.**

Where defendant's delay, concurring with that of the other connecting lines, caused the cattle to be late in arriving at market, it can not be heard to say that the other carriers alone are liable; nor will the fact that the other lines could, by the use of ordinary care and diligence on their part after the cattle were actually received by them, have gotten them to market at the intended time, relieve the defendant of liability for its delay.

**4.—Evidence—Pleading Introduced—Limiting.**

Where defendant introduced in evidence plaintiff's original petition for the purpose of showing that the amended petition, on which the trial was being had, set up a new cause of action, when, in fact, there was no issue as to new cause of action in the case, and the court instructed the jury that they could not consider such petition for the purpose of showing that plaintiff had set up a new cause of action, but might consider it for any other purpose if they saw proper to do so, there was no error of which plaintiff could complain.

Appeal from the District Court of Mitchell. Tried below before Hon. James L. Sheppard.

*T. J. Freeman* and *J. M. Wagstaff,* for appellant.

*Cowan & Burney,* for appellee.

SPEER, ASSOCIATE JUSTICE.—This suit was originally filed by the appellee against the present appellant and its connecting carriers to recover damages to a shipment of four hundred and fifty head of cattle from Big Springs, Texas, to Kansas City, Missouri. There was an allegation of rough handling and delay as to all of the defendants. Afterward, a settlement seems to have been made with the connecting lines, and appellee amended his petition by omitting them from his suit, and proceeded to trial against the appellant alone. There was a judgment in his favor for the sum of $730.06, from which this appeal is prosecuted.

The first complaint is to the following paragraph of the charge: "If you find for the plaintiff you will assess his damages at the difference, if any, in the market value of said cattle at Kansas City, Missouri, at the time and in the condition they arrived there, and their market value at the time and in the condition they should have arrived there, had they been transported by defendant from Big Springs to Fort Worth, Texas, without unreasonable delay." The point made is that the charge authorized the jury to find against the appellant any damages that occurred to the stock after they left Fort Worth, Texas—the end of its line. But when read in connection with the paragraphs immediately preceding and following it, it is clear that the jury could not have been misled in this particular. Paragraph six is: "If, therefore, you believe from the evidence before you that the defendant did not carry and transport plaintiff's cattle from Big Springs, Texas, to Fort Worth, Texas, after delivered to it at Big Springs, with reasonable diligence and despatch, and was guilty of unreasonable and unnecessary delays at various points along its line, in the transportation of said cattle, as alleged in plaintiff's first amended original petition; and if you further believe from the evidence that such lack of reasonable diligence and despatch (if any) and such unreasonable delays- (if any) were the result of want of such care on the part of the defendant as an ordinarily prudent person would have exercised in the management of his own affairs under like circumstances and conditions; and if you further believe from the evidence that such cattle were thereby injured and depreciated in value, and by such delay (if any) failed to arrive in Fort Worth, Texas, in time to be transported by the Gulf, Colorado & Santa Fe Railway Company and its connections to Kansas City, Missouri, so as to arrive there in time for the market on Monday (provided you find the market on Monday declined by Tuesday), then you will find in favor of plaintiff, and assess his damages as herein directed." And the eighth paragraph is: "If you find for the plaintiff, the damages you will assess in his favor (if any) are such only as you may find from the evidence was the natural and proximate result of the negligence (if any)

of the defendant in failing to transport said cattle from Big Springs, Texas, to Fort Worth, Texas, within a reasonable time, and in allowing said cattle to be unreasonably delayed between said points (if you find they were unreasonably delayed). In no event will you allow plaintiff any damages which may have accrued to him (if any) by the negligence of the connecting carriers, the Gulf, Colorado & Santa Fe Railway Company and the Atchison, Topeka & Santa Fe Railway Company, in failing to transport said cattle from Fort Worth, Texas, to Kansas City, Missouri, their destination, as the last-named carriers have been dismissed from this suit."

It is difficult to conceive how the jury could have been more explicitly directed to find against this appellant only such damages as were occasioned by its negligence.

It is contended by appellant that the court erred in permitting appellee to prove by the witness Sims that "the market in Kansas City, early on Monday morning, December 16, 1901, was better than the market at any other time in the day, by showing that the market was generally better early in the morning than later in the day." It is not contended that the witness was not familiar with the fact about which he testified, and we fail to see why, if he knew such to be the fact, he could not testify that the buyers were more plentiful, and the market generally better, during the early morning hours than at other parts of the day. When the cattle in question were shipped they were intended for the Monday morning market. And the evidence is sufficient to authorize the jury to find that appellee's representative, Sims, was justified in holding the cattle the length of time he did in Fort Worth for feed, water and rest, in view of the long delay already occasioned by the appellant. By reason of this Monday's market was missed. At least, the appellant's delay in this respect concurred with the delays by the other carriers in causing the loss of this market. Under these circumstances the appellant can not be heard to say that the other carriers alone are liable. (Texas & Pac. Ry. Co. v. Smith, 3 Texas Law Jour., 286, 79 S. W. Rep., 614.)

The court correctly refused special charge number 1, directing the jury to exclude from their computation damages resulting from delays in transit after the stock were delivered to the Santa Fe Railroad, because the question was sufficiently covered in the parts of the charge already quoted in this opinion.

As already intimated, it can make no difference, so far as the liability of this appellant is concerned, that its connecting carriers could, by the use of ordinary care and diligence on their part after the cattle were actually received by them, have delivered them in Kansas City in time for Monday's market. The second special charge was therefore properly refused.

For this reason, and the further reason that appellee was reasonably justified in holding his cattle in the pens at Fort Worth for the time shown, the sixth assignment of error, complaining that the verdict is contrary to the evidence, in that the cattle would have reached the market on Monday morning if they had been shipped out at once upon arrival at Fort Worth, was properly overruled.

This disposes of all assignments except the second, and as to the dis-

position of this we have not been able to agree, the majority, however, is of the opinion that it shows no error. The assignment is based upon bill of exception showing that the appellant offered in evidence the original petition of the appellee in this cause, in which he sought to recover damages against appellant, and also the other roads mentioned, showing in substance, among other things, that it was then alleged that the Santa Fe Railroad, which transported the cattle from Fort Worth to market, damaged them in the sum of about $2,000, for which judgment was sought. The original petition complained of delay upon the part of the Santa Fe Railway Companies, while in the amended original petition, upon which the appellee went to trial, he did not claim any damages or charge any delays against these companies, but, on the contrary, asserted that they "transported his cattle at a very reasonable rate of speed, considering the fact that it was impossible, at the time the Texas & Pacific Railway Company delivered the cattle, to the connecting carrier to make Monday's market." Appellant offered in evidence this abandoned pleading "for the purpose of showing that plaintiff had set up a new cause of action in his first amended original petition, on which he had gone to trial, and for all other purposes." The appellee thereupon objected to its being considered by the jury for the purpose of showing that there was a new and different cause of action set up in the first amended original petition, but stated that he was willing for the petition to be read to the jury and to be considered by the jury for any purposes other than that the first amended original petition contained a new and different cause of action to the original petition, and for any admissions therein for the purpose of showing any contradictory or inconsistent statement or position. The court sustained the objection and permitted the petition to be read to the jury, but, at the request of appellee, instructed the jury "that they should not consider the same for the purpose of showing that the plaintiff had set up a new and different cause of action in his first amended original petition, but that the jury could consider it for any other purpose if they saw proper to do so." Since there was no question of abatement or limitation whatever in the case, it seems needless to say that, whether or not the appellee was setting up a new cause of action, was not an issue before the jury. If the testimony had not been offered "for other purposes than to show a new cause of action," it can not be doubted but that the court should have excluded the same upon proper objection, because not relevant to any issue in the case. It can not successfully be contended that appellee was asserting a new cause of action. The testimony, insofar as it tended to prove this issue, then, was clearly not admissible, although it was admissible for the purpose of contradicting appellee in his claims asserted at the trial. It seems to be well settled by the authorities that, where testimony admitted upon the trial relates only to a single issue or party, the court, upon proper request, should properly instruct the jury to consider the testimony in its proper connection. (Bekkeland v. Lyon, 96 Texas, 255, 72 S. W. Rep., 56; Halsell v. Decatur Cotton Seed Oil Co., 36 S. W. Rep., 848, and authorities there cited.) So. in this case, it would undoubtedly have been the right of appellee to have had the court to submit such an instruction, qualifying and limiting the testimony to its proper scope—that is, to impeaching purposes. We fail to see how the action of

the court, in limiting the testimony at the time of its admission, could be more harmful to appellant than the other course, had it been pursued. In Houston & Texas Central Railway Company v. Poole (63 Texas, p. 246), it is said: "The general rule is that, where evidence is admissible for any purpose, it is incumbent upon those against whom it should not operate to limit its effect by asking appropriate instructions of the court. Here the company, as appears from the bill of exceptions, asked the court, in the admission of the evidence, to limit its operation to defendant Scott. This the court refused to do, but admitted the evidence without qualification. This evidence, as admitted, bore directly upon one of the contested issues between the company and appellee, . . . and, as the attention of the court had been called to the fact that this evidence should be limited to the defendant Scott, we are of the opinion that it was error to submit that issue without the qualification." For that error the judgment was reversed and the cause remanded. (See, also, Weir v. McGee, 25 Texas Supp., 33.)

In Bender v. Peyton (4 Texas Civ. App., 57, 23 S. W. Rep., 222), a memorandum made by the parties, in their effort to settle, was offered in evidence, and defendants objected that it did not show an account or an account stated. In explanation of the ruling the trial judge, in signing the bill of exceptions, stated "that it was admitted, not as an account stated, but as bearing on the question of general indebtedness, and the jury was so informed." The clear inference is that the jury was so informed at the time the evidence was admitted. This was held by the Court of Civil Appeals to have been proper, and the Supreme Court refused a writ of error. At all events, it is inconceivable that the appellant has suffered harm through the ruling complained of. The petition was not admissible, nor could it be considered, as showing a new cause of action, for that would be to inject into the case a foreign issue, to the confusion of the jury. Its real legitimate use in the case was to impeach the appellee by showing prior contradictory and inconsistent statements and contentions. It was admitted in evidence, and presumably argued to the jury for all it was worth, and considered by them upon the only issue to which it was relevant. Appellant, then, has no room to complain of the court's action in limiting the purposes for which the instrument was admitted, since it created the necessity for such ruling by specifically tendering the evidence for an improper purpose. The ruling was not only right, but necessary.

All assignments are overruled and the judgment is affirmed.

*Affirmed.*

Writ of error refused.