ST. LOUIS S. W. RY. CO. OF TEXAS v.
MILLER & WHITE. (No. 8182.)

(Court of Civil Appeals of Texas. Ft. Worth.
May 1, 1915.)

1. CARRIERS ☞219—DELAY IN TRANSPORTA-
TION—LIABILITY OF INITIAL CARRIER.

Where the initial carrier of live stock,
though guilty of delaying transportation, deliv-
ered an hour and a half late the stock to the
connecting carrier while its train was on its
track, but the connecting carrier refused with-
out cause to accept the stock and transport it
in that train, thereby delaying transportation,
the initial carrier was not liable for delay in the
delivery of the stock at its destination.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 950, 951; Dec. Dig. ☞219.]

2. APPEAL AND ERROR ☞265 — QUESTIONS
REVIEWABLE—FINDINGS—JUDGMENT.

Appellant may not attack the findings of
fact unless he excepts thereto in the trial court
and reserves his exceptions as provided by law,
but he may complain of a judgment because
contrary to the findings without excepting to the
findings or requesting additional findings.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 1461, 1536–1551; Dec. Dig.
☞265.]

3. TRIAL ☞398 — GENERAL AND SPECIAL
FINDINGS—VARIANCE—EFFECT.

A general finding at variance with a spe-
cific finding must be disregarded.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 946, 947; Dec. Dig. ☞398.]

4. CARRIERS ☞230—INITIAL AND CONNECT-
ING CARRIERS — DELAY IN TRANSPORTING
FREIGHT—GENERAL AND SPECIAL FINDINGS.

In an action against the initial and con-
necting carriers for delay in transporting live
stock, a finding of concurrent negligence by both
carriers, and a finding that the initial carrier
tendered the stock to the connecting carrier,
while its train was on its track and about to
leave, but that it refused to then accept the
shipment, are inconsistent, and the second find-
ing controls the first, and a judgment against
both carriers cannot be sustained.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 961, 962; Dec. Dig. ☞230.]

Appeal from Comanche County Court; J.
H. McMillan, Judge.

Action by Miller & White against the St.
Louis Southwestern Railway Company of
Texas and others. From a judgment for
plaintiff, defendant named appeals. Revers-
ed, and cause remanded.

Marshall Ferguson, of Stephenville, and
Kearby & Kearby, of Comanche, for appel-
lant. Goodson & Goodson, of Comanche, for
appellees.

BUCK, J. This suit was instituted by H.
W. Miller and H. L. White in the county
court of Comanche county, Tex., against the
St. Louis Southwestern Railway Company of
Texas and Avery Turner and G. F. Schleyer,
receivers of the Ft. Worth & Rio Grande
Railway Company, to recover damages for a
shipment of live stock from Lamkin, Tex.,
on the line of the St. Louis Southwestern
Railway Company to Ft. Worth, Tex. The
shipment was made by virtue of separate

contracts between plaintiffs on the one hand
and the two railway companies on the other,
in each of which contracts the liability of the
railway company was limited to losses sus-
tained by reason of negligence or fault on
its own line. By its contract the St. Louis
Southwestern Railway Company undertook to
transport said live stock, consisting of 34
head of cattle and one hog in one car, billed
out in the name of H. L. White, and 32 head
of cattle in the other, shipped in the name of
H. W. Miller from Lamkin to Comanche, a
distance of 21 miles, Comanche being the
terminus of its line of railway, and by its
contract the receivers' railway company un-
dertook to transport said shipments from
Comanche to Ft. Worth. The live stock
were loaded at Lamkin on Monday afternoon,
December 15, 1913, and it was alleged that if
they had been transported with due diligence
and dispatch, they would have reached Ft.
Worth early Tuesday morning in time for
the market of that day, but that on account
of the negligence of defendants and the de-
lays alleged, the shipment did not reach its
destination until 3:30 o'clock p. m. Wednes-
day, December 17th, and too late for the
market of that day, and that therefore the
live stock had to be held over in the yards at
North Ft. Worth until Thursday, December
18th, at which time they were sold. Damages
were claimed for an alleged decline in the
market between Tuesday and Thursday, for
depreciation in selling appearance and mar-
ket condition of the live stock, and for shrink-
age; the total amount claimed being $323.46.
Defendants answered separately, interposing
a general demurrer and special exceptions
on the part of the receivers, and each denying
the allegations of negligence in plaintiffs'
petition, and each specially pleading its con-
tractual limitation of liability to losses
sustained by reason of negligence on its own
line of railway. The cause was tried before
a court without the aid of a jury, and judg-
ment rendered against defendants jointly
for $309.75, from which judgment each de-
fendant separately appeals.

There is no statement of facts in the rec-
ord, but the court filed his findings of fact
and conclusions of law, which are hereinafter
set out:

"(1) I find that the plaintiffs, on Monday,
December 15, 1913, delivered to the defendant
the St. Louis Southwestern Railway Company,
at Lamkin, Tex., the stock described in their pe-
tition, for shipment from Lamkin, Tex., to Co-
manche, Tex., final destination, North Ft.
Worth, Tex., and that same were accepted for
such shipment by said railway company under
and according to the terms of a certain written
contract entered into between said railway
company and the plaintiffs, which contract was
in part as follows, and that such stock were
shipped under said contract, to wit: That the
said St. Louis Southwestern Railway Compa-
ny specially limited its liability to its own
line, and that it only contracted to carry said
cattle to Comanche, Tex., and there deliver same

to its connecting carrier, the receivers of the Ft. Worth & Rio Grande Railway Company.

"(2) I find that defendants Avery Turner and G. H. Schleyer, receivers of the Ft. Worth & Rio Grande Railway Company, received said shipment of stock from its connecting carrier, the St. Louis Southwestern Railway Company of Texas, and accepted said shipment of stock, to be transported from Comanche, Tex., to North Ft. Worth, Tex., on Tuesday morning, December 16, 1914, at about 9 o'clock a. m. under and according to a written contract entered into by and between said plaintiffs and said receivers, which among other things contained the following agreements and conditions, to wit:

" 'That said shippers at their own risk and expense are to take care of, feed, water, and attend to said stock while the same may be in the stockyards of the carrier, or elsewhere awaiting shipment, and while the same is being loaded, transported, unloaded and reloaded, and to load, unload and reload same at feeding and transfer points, and whenever the same may be unloaded and reloaded for any purpose whatever, and hereby covenants and agrees to hold said carrier harmless on account of any loss or damage to his said stock while being so in his charge and so cared for by him or his agents and employés as aforesaid, except such damages as may result from the negligence of the carrier.

" 'Second, that the live stock covered by this contract is not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market, and that this contract is only an agreement for the movement of said stock over the railway line of the carrier between the stations named, and it is not nor shall it be construed as a contract for through shipment over any railway line except that of the carrier.'

"And said contract further provided: 'Twelfth. * * * The understanding of both parties being that the carrier shall not be held or deemed liable for anything in connection with said live stock beyond its own line of road, excepting to protect the through rate of freight named herein. * * * But in no event shall one carrier be liable for the negligence of another * * * and said shipper waives any right to hold this carrier liable for any delay, damage or injury to said live stock which occurred prior to the exact time at which said live stock were received by this carrier for transportation.'

"(2a) I further find that plaintiffs accompanied said shipment of cattle from Lamkin, Tex., to Comanche, Tex., and thence to Ft. Worth, Tex., as caretakers, under said contracts aforesaid.

"(3) That Lamkin, Tex., is about 21 miles from Comanche, Tex., and that said shipment from the time it left Lamkin, Tex., was about 2½ or 3 hours in reaching Comanche, Tex., and that this was not a reasonable time in which to make said run, and was a negligent delay, and no excuse was shown for such negligent delay. That 1½ hours is a sufficient and reasonable time to make said run from Lamkin, Tex., to Comanche, Tex.

"(4) That at the time the St. Louis Southwestern Railway Company of Texas train got to Comanche, Tex., on the night of December 15, 1913, the north-bound freight train of the Ft. Worth & Rio Grande Railway Company, receivers, was on the track at Comanche, Tex., and that the agents of the St. Louis & Southwestern Railway Company of Texas tendered said cars containing said shipment to the receivers' line to be taken to Ft. Worth, Tex., that night, but that receivers' line refused to accept said shipment that night.

"(5) That no excuse was shown by either of said defendants for the failure of the first-named defendant to deliver, nor the refusal of the last-named defendant to accept, said shipment of cattle out of Comanche, Tex., on the night of December 15, 1913.

"(6) That by the use of ordinary care and diligence, and without the negligent delays, on the part of both defendants, said shipment could have been carried out of Comanche, Tex., on the night of December 15, 1913, and if it had, it would have reached Ft. Worth, Tex., on Tuesday morning, December 16, 1913, in ample time for the early morning market of said day, and the damages complained of in this suit would not have occurred.

"(7) That the shipment was held by the St. Louis & Southwestern Railway Company at Comanche, Tex., on the night of December 15, 1913, and unloaded in its stock pens, and on the morning of December 16, 1913, were delivered to the receivers' road about 9 o'clock a. m. and accepted by said receivers' road at said time.

"(8) That said shipment was held in the stock pens of receivers' road at Comanche, Tex., from about 9 o'clock a. m. December 16, 1913, until about 10:30 o'clock p. m. on December 16th, when they were loaded for shipment to North Ft. Worth, Tex., and were transported by the receivers' road to North Ft. Worth, Tex., a distance of about 117 miles, reaching there about 1:30 or 2 o'clock on Wednesday, December 17, 1913.

"(9) That receivers' road had no facilities at their stock pens in Comanche, Tex., for either feeding or watering said cattle, and that the shippers demanded that said cattle be fed and watered by the receivers, or that facilities be furnished them for said purpose, and which demand was refused by the receivers. That plaintiffs at their own expense fed said cattle the hay stated in their petition, but could not water said cattle at all, on account of the want of facilities for so doing, and said cattle were not watered from date of loading at Lamkin, Tex., until they reached North Ft. Worth, Tex.

"(10) That the train on which said cattle were transported from Comanche, Tex., to North Ft. Worth, Tex., was roughly and negligently handled, and was negligently delayed in reaching North Ft. Worth, Tex.

"(11) That at the time said shipment was delivered to the consignees at Ft. Worth, Tex., the market for said day had closed—there were no cattle buyers on the yards, and no market for said cattle on said day—and that by reason of there being no market on said day of Wednesday, December 17th, the plaintiffs were compelled to hold said shipment over on the yards until the market of Thursday, December 18th, and were compelled to feed them the extra feed stated in their petition.

"(12) That said cattle and hog, by reason of the negligence of the defendants in the negligent delays, want of water, standing on cars, and the rough handling and treatment, were damaged as follows: Grown cattle, an extra loss in weight and flesh of 50 pounds per head; calves, an extra loss in weight and flesh of 25 pounds per head; one hog, extra loss in weight and flesh, 47 pounds. That all of said shipment was damaged five cents per hundredweight in market condition and selling appearance. That said market had declined 25 cents per hundredweight difference in the market on Tuesday, December 16th and Thursday, December 18th, and that all of said damages to the plaintiffs, by reason of the negligence of the defendants, amount to the sum of $309.75.

"(13) That at all times during said shipment, the plaintiffs gave their said cattle all the proper attention that they could with the facilities furnished by the defendants.

"(14) That the plaintiffs were in no way negligent, and that all of the damages complained of were caused by the negligence of the defendants as above stated, and without which said damages would not have occurred, and that said damages were caused by the combined and concurring negligence of both of said defendants.

## "Conclusions of Law.

"(1) I conclude as a matter of law that, by the exercise of ordinary care and reasonable diligence, said shipment could have been transported from Lamkin, Tex., via Comanche, and to North Ft. Worth, Tex., by both of said defendants, in time to have reached North Ft. Worth, Tex., in time for the morning market of December 16, 1913, and that it was the duty of the defendants under the law to have so delivered said shipment.

"(2) I conclude as a matter of law that the damages complained of were brought about and resulted from the combined and concurring acts of negligence on the part of both of the defendants, and that both of said defendants are jointly liable for the damage resulting proximately from their combined and concurring negligence.

"(3) I conclude as a matter of law that the plaintiffs are entitled to judgment against both defendants jointly for their damage and injury, caused by the combined and concurring negligence of both of said defendants, in the sum of $309.75, together with 6 per cent. per annum interest thereon from December 18, 1913, and all costs of this suit; and judgment is so rendered."

[1] It will be seen that in paragraphs 4 and 5 of said findings of fact, the court finds that the St. Louis Southwestern Railway Company of Texas train reached Comanche on the night of December 15th, while the north-bound freight train of the receivers' railway company was on the track of that road at Comanche, and that the agents of the first-named railway company tendered said cars containing such shipment to the receivers' line to be taken to Ft. Worth, Tex., that night, but that the receivers' line refused to accept said shipment that night, and, further, that no excuse was shown by either of said defendants for the failure of the first-named defendant to deliver, nor the refusal of the last-named defendant to accept, said shipment of cattle out of Comanche, Tex., on the night of December 15th. In the face of the court's findings in the fourth paragraph above that the shipment in controversy was tendered to the receivers' line on the night of December 15th, and that said receivers' line refused to accept said shipment that night, and the further finding in paragraph 5 that no excuse was shown for the refusal of said receivers' line to accept said shipment on said night, we are unable to understand upon what basis a joint judgment could be sustained. While it might be reasonably claimed that, because of the time taken by the St. Louis Southwestern Railway Company to transport the shipment in question from Lamkin to Comanche, which the court found to be an unreasonable time for such shipment, and that the reasonable time was from 1 to 1½ hours less than that taken, if by reason of said delay in reaching Comanche the receivers' line was not prepared to ship said live stock out of Comanche that night, as they would have been had the shipment from Lamkin to Comanche been made within the time that the court found to be reasonable, and that therefore this negligent delay on the part of the St. Louis Southwestern Railway Company of Texas entered into and became a concurring cause of the delays that afterwards occurred on the receivers' line, and that therefore the St. Louis Southwestern Railway Company of Texas would be jointly liable by reason of damage sustained from such delays occurring on both lines of railway, but we cannot indulge in such a presumption in the face of the distinct finding of the court that the evidence fails to show any reason or cause for the refusal of the receivers' line to accept the shipment when it was tendered by the line of its codefendant. If the receivers' line had no good reason for refusing to accept the two cars from its codefendant when tendered, as found by the court, then it must follow, it seems to us, that said receivers' line was not caused to so refuse the tender by the delay that had theretofore occurred in the shipment from Lamkin, and that in the exercise of ordinary care it could and should have accepted the shipment when tendered and transported it to the point of destination, and that the St. Louis Southwestern Railway Company of Texas, under its contract limiting its liability to its own line, should not be held liable for delays occurring or damages accruing to the shipment while on the line of its codefendant.

[2] Appellees urgently insist that the case of Landers v. McCutchan, 161 S. W. 960, and the case of Seedig v. Bank, 168 S. W. 445, both by this court, are authority for their contention that where findings of fact and conclusions of law are filed and no exceptions to the findings are made, or request for additional findings, the Court of Appeals will only inquire whether the pleadings sustain the judgment, and cite, in addition to the two cases mentioned, Pugh v. Werner, 166 S. W. 698, and Witt v. Byrum, 135 S. W. 687, Smith v. Ernest, 46 Tex. Civ. App. 247, 102 S. W. 129, and Jones v. Jones, 146 S. W. 265, and quote from Ins. Co. v. Milliken, 64 Tex. 46, in which the court uses the following language:

"If no exception to the conclusions of law or judgment of the court is noted, unless the failure to except be waived or not insisted on, the only inquiry will be whether the pleadings justify the judgment; any other rule would often cause the reversal of judgments which would be affirmed if the case was fully presented."

We do not think that the contention of appellees that the judgment should be affirmed in this case because of the failure of appellants, or either of them, to except to the findings of fact by the court can be sustained by us, or is supported by the authorities cited. It is true, as stated in these authorities, that an appellant cannot successfully attack the findings of fact filed by the court unless he has excepted thereto in the trial court and reserved his exceptions as provided by law. But we have before us a case in which the appellants are seeking to reverse the judgment because, as claimed, the judgment is contrary to and not supported by the findings of fact themselves, and we believe, for the

reasons above stated, such contention must be sustained. 3 Cyc. p. 376, top of page.

In the instant case we do not, in any way, intend to question the correctness of the holdings of the courts in the cases cited by appellants, as such holdings are limited by the facts and issues presented therein. But the holdings in these cases do not, in our opinion, justify the appellate court in sustaining a judgment which cannot be predicated upon the finding by the trial court of facts which are necessary to its support, nor in sustaining a judgment which is directly at variance with such findings upon some material issue, even where the court makes further and contrary findings, in the nature of general conclusions or deductions from the evidence as a whole. If the court finds a fact which would preclude the entry of the judgment rendered, such finding cannot be obviated or deprived of its effect by other findings which in a general way assert the necessary basis for the judgment, in the instant case, a joint liability for all the injuries for which damages are recovered. The appellants, in their specifications of error attacking the judgment, are not relying on or seeking to refer to the evidence advanced on the trial, which is not before us, and which, therefore, this court cannot consider, but *upon the facts as found by the court*, which are before us.

[3] If a discrepancy exists between the general finding and the more specific finding of particular facts, the latter must control. Bank of Oroville v. Lawrence, 4 Cal. Unrep. Cas. 845, 37 Pac. 936. A general finding by the court at variance with the specific facts found must be disregarded. Paisley v. Casey (Com. Pl.) 18 N. Y. Supp. 102; Learned v. Castle, 78 Cal. 454, 18 Pac. 872, 21 Pac. 11.

[4] Unless the general finding of concurring negligence by both defendants, proximately causing all the loss sustained, can be harmonized with the specific finding that the shipment reached Comanche from Lamkin while the north-bound freight train of the receivers' railway company was on the track, and that the agents of the St. Louis & Southwestern Railway Company tendered said shipment to the receivers' line, and that it was refused, and no good cause was shown why said tender was refused, and why said shipment was not transported that Monday night over said receivers' line, then the further findings of joint liability and concurring negligence as to further damages must be disregarded. We do not see how such apparent inconsistent findings can be harmonized. To say that it was negligence on the part of the initial carrier to do no more than tender to its connecting carrier the shipment in question, when the court finds that if such shipment had been accepted by the latter at the time of the tender and transported, as it could have been done, in the train then on the track, and if so transported would have

reached its destination in time for the market of the next day, and thus avoided the major portion, at least, of the damages claimed, it seems to us, is unsound in reason and in law. What more could the initial carrier have done? It was not called upon to resort to physical force or the mandatory process of the law to enforce an acceptance by the connecting carrier.

Believing that this error is sufficiently presented in the assignments by both appellants, and that said assignments should be sustained, it is our judgment that the judgment of the trial court should be reversed and the cause remanded; and it is so ordered.