ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS et al. v. MILLER & WHITE. (No. 8460.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 4, 1916. Rehearing Denied Dec. 2, 1916.)

1. CARRIERS ⟸180(3)—JOINT LIABILITY—LIABILITY FOR PROPORTIONATE PART OF DAMAGES.

While in intrastate shipments, which are not through shipments, a carrier may by contract limit its liability to damages occurring by reason of negligence on its own line, if the damages proven are shown to have resulted at least partially from the joint negligence of two carriers, each may properly be held responsible for the proportion of the damages accruing which its negligence bears to the entire negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 821; Dec. Dig. ⟸180(3).]

2. CARRIERS ⟸150—LIVE STOCK—STIPULATION AGAINST LIABILITY FOR NEGLIGENCE.

A common carrier may not stipulate so as to relieve itself from liability arising from its own negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 654–659; Dec. Dig. ⟸150.]

3. CARRIERS ⟸228(5) — CARRIAGE OF LIVE STOCK—NEGLIGENT REFUSAL OR FAILURE TO ACCEPT SHIPMENT — SUFFICIENCY OF EVIDENCE.

In an action for delay in shipment of live stock in transit, evidence held sufficient to justify a finding of a negligent refusal or failure of a defendant railway to accept the shipment at a connecting point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ⟸228(5).]

4. CARRIERS ⟸219(4) — CARRIAGE OF LIVE STOCK—JOINT LIABILITY OF ROADS.

Where the negligence of a railroad in failing or refusing to accept a shipment of live stock at a connecting point, concurred with the negligence of a connecting road in failing to deliver the shipment in question, on the transfer track, both companies were responsible for delays and the consequent damages proximately resulting from such negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 950; Dec. Dig. ⟸219(4).]

5. CARRIERS ⟸219(4) — CARRIAGE OF LIVE STOCK—DELAY.

If the failure of a railroad to receive a shipment of live stock when tendered it by a connecting road was negligence, and such negligence prevented the shipment of the cattle that night to destination, the railroad cannot excuse itself from liability on the ground that it did not actually receive the shipment until the next day.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 950; Dec. Dig. ⟸219(4).]

6. TRIAL ⟸296(11)—INSTRUCTIONS—CURE OF ERROR.

In an action against two railroads for delay in shipment of live stock in transit, the court charged that if the jury found for plaintiffs against both defendants, they should apportion such damages if any, according to and in proportion to the respective liabilities of the defendants, and state in their verdict the amount of damages, if any, found against each defendant. The charge was objected to as failing to inform the jury what the liabilities of the two defendants were, or to afford any guide in assessing damages against them. The court charged specially at the request of a defendant that the undisputed evidence showed that the live stock was shipped over the line of such defendant under a written contract under the terms of which it was agreed that defendant would only be liable for any damage which might occur on the line of defendant, or as the result of its negligence, so that plaintiffs could not recover against defendant for any damages except such as the evidence showed was occasioned by the negligence of defendant, its agents or employés. Held, that any deficiency in the main charge was cured by the special charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 715; Dec. Dig. ⟸296(11).]

7. APPEAL AND ERROR ⟸1140(1)—EXCESSIVE DAMAGES—REMITTITUR.

In an action for delay in the shipment of live stock in transit, that the verdict is excessive to the extent of the improvement in selling appearance of the cattle on Thursday when they were sold over Wednesday, the day when they arrived, was at most only a question of requiring a remittitur.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462, 4464, 4470–4474; Dec. Dig. ⟸1140(1).]

8. APPEAL AND ERROR ⟸1032(1)—PREJUDICIAL ERROR—BURDEN.

The burden is on appellant to show probable injury as well as error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4047, 4051; Dec. Dig. ⟸1032(1).]

9. APPEAL AND ERROR ⟸1140(1)—SMALL ERROR IN VERDICT—REMITTITUR.

In an action for delay in shipment of live stock in transit, error in the verdict in that it left undetermined only the question of 25 cents per hundredweight on 470 pounds, due to decline in market from Tuesday to Thursday, was too small to even require remittitur.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462, 4464, 4470–4474; Dec. Dig. ⟸1140(1).]

10. EVIDENCE ⟸471(35)—OPINION OR CONCLUSION OF WITNESS.

In an action for delay in shipment of live stock, the question to plaintiffs: "Can you, by looking at this account sales, tell what the difference in the market value of the cattle in question were on Thursday, the 18th of December, 1913, and on Tuesday, when you should have gotten there?" was improper, so far as the part "when you should have gotten there" was concerned as calling for an expression of opinion, and a conclusion on a mixed question of law and fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2185; Dec. Dig. ⟸471(35).]

11. APPEAL AND ERROR ⟸1048(5) — HARMLESS ERROR—EVIDENCE.

The impropriety of such question in that it called for an expression of opinion was harmless, where the witnesses answered, showing the dif-

---

ference in the market value of each kind of stock included in the shipment on Tuesday and Thursday.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4143, 4151, 4158, 4159; Dec. Dig. ☞1048(5).]

12. EVIDENCE ☞471(35)—OPINION.

In an action for delay in a shipment of live stock, where the market value of the cattle on Thursday was established practically beyond question by the introduction of the account sales, it being agreed that it showed the market value of the different animals sold, plaintiffs were properly permitted to testify as to the difference in the market value of their cattle on Tuesday and Thursday, rather than stating what the market value was on the two dates, and leaving to the jury the question of determining the difference.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2185; Dec. Dig. ☞471(35).]

13. APPEAL AND ERROR ☞203(3)—RESERVATION OF GROUNDS OF REVIEW—TESTING ACCURACY OF WITNESS.

Where appellant failed to test the accuracy of a witness on certain matter, it could not complain on appeal of the answer made.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞203(3); Witnesses, Cent. Dig. § 536.]

14. CARRIERS ☞230(6) — CARRIAGE OF LIVE STOCK—NEGLIGENT DELAY—QUESTION FOR JURY.

In an action against two defendants for delay in shipment of cattle, the question whether a road was liable as partially responsible for the delay, held for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ☞230(6).]

15. CARRIERS ☞228(5)—CARRIAGE OF LIVE STOCK—NEGLIGENT DELAY—SUFFICIENCY OF EVIDENCE.

In an action against two railroads for delaying a shipment of live stock, evidence as to negligent delay by defendants held sufficient to support a verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ☞228(5).]

Appeal from Comanche County Court; J. H. McMillan, Judge.

Suit by Miller & White against the St. Louis Southwestern Railway Company of Texas and another. From a judgment for plaintiff, both defendants appeal. Judgment against each defendant affirmed.

Kearby & Kearby, of Comanche, A. R. Eidson, of Hamilton, and Keith & Pittman, of Stephenville, for appellants. H. N. Goodson, of Comanche, for appellee.

BUCK, J. This is the second appeal of this case; the opinion of this court on the first appeal being found in 176 S. W. 830. The pleadings on both trials are the same, and the evidence largely so. The cause was submitted to the jury in a general charge, and the jury found for the plaintiffs against the defendant St. Louis Southwestern Railway Company, hereinafter called the Cotton Belt, $214.36, and against the Receivers' Railway Company, $109.10, without interest; the aggregate amounts so found being the sum for which suit was brought. Thereupon judgment was rendered for the plaintiff in conformity with the verdict. Both defendants appeal.

The damages alleged by plaintiffs are itemized in their petition as follows:

(11) The plaintiffs allege that the car of live stock billed out in the name of H. L. White, contained 34 head of cattle and one hog, and the car in the name of H. W. Miller contained 32 head of cattle.

(12) The plaintiffs allege that by reason of the premises set out that the different items of their damage and injury are as follows:

As to the car last named, shipped in the name of H. W. Miller, as follows:

| | |
|---|---:|
| To 25 cents per hundredweight decline in market from Tuesday to Thursday, on the entire shipment in said car of 22,150 pounds | $55.37 |
| To 10 per cent. damage in selling appearance and market condition on 22,150 pounds | 22.15 |
| To 50 pounds per head shrinkage on 30 head of grown stuff in said car at market price of same on December 16th, and 25 pounds per head shrinkage on 2 calves at market price of same on December 16th | 80.49 |

On said other car in name of H. L. White, as follows:

| | |
|---|---:|
| To 25 cents per hundredweight on said entire shipment decline in market from Tuesday, the 16th, to Thursday, the 18th, of December on 19,960 pounds | $ 49.90 |
| To 10 cents per hundredweight damage in selling appearance on 19,960 pounds | 19.96 |
| To 50 pounds per head shrinkage on all grown cattle and hogs and 25 pounds per head shrinkage on all calves in said shipment at market price on Tuesday, December 16th | 88.09 |
| To extra feed bill on both cars | 11.50 |
| To total damage on both cars | $323.46 |

We do not find any error in the refusal of the trial court to give defendant receivers' proffered peremptory instruction, as claimed in its first assignment, because, as asserted, the plaintiffs were not entitled to recover against the defendants separately, because of a plea of joint liability, without any allegation as to the amount or character of any several liability, the evidence showing that contracts of shipment entered into between the plaintiffs and the two defendants were several, and not joint.

The plaintiffs alleged both separate acts of negligence and joint negligence, and pleaded both several and joint liability, specifying the negligent handling of the cattle between Lampkin and Comanche by the Cotton Belt, and until the delivery by it to its codefendant, and then alleged acts of negligence on the part of the Receivers' Railway between Comanche and North Ft. Worth. They alleged negligence on the part of the Cotton Belt for failure to deliver to its codefendant the shipment in question within a reasonable time, and negligence on the part of the Receivers' Railway for failure to receive the shipment promptly upon tender. Allegations of negligence against each road

were made because of delays and rough handling. The court submitted to the jury only the question of several liability, and the jury found as to the several liability, assessing the damage against each defendant in proportion as its negligence caused, or contributed to cause, the total damage.

[1] While in intrastate shipments, the same not being through shipments, a carrier may by contract limit its liability to damages occurring by reason of negligence on its own line, yet, if the damages proven are shown to have resulted, in part at least, from the joint negligence of the two carriers, each carrier may properly be held responsible for the proportion of the damages accruing which its negligence bears to the entire negligence. T. & P. Ry. Co. v. Slaughter, 37 Tex. Civ. App. 624, 84 S. W. 1085; G. C. & S. F. Ry. Co. v. Godair, 3 Tex. Civ. App. 514, 22 S. W. 777.

[2] A carrier may not stipulate so as to relieve itself from liability arising from its own negligence. H. & T. C. Ry. Co. v. Davis, 11 Tex. Civ. App. 24, 31 S. W. 308, aff. 88 Tex. 593, 32 S. W. 510; M. P. Ry. Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785. Therefore we overrule the first assignment.

Under the second assignment appellant receivers further allege error in the failure of the court to give the peremptory instruction requested, because, as claimed, the evidence shows without dispute that the receivers, by contract, limited their liability to injuries received, or damages occasioned, by their own negligence, after said cattle had actually been received for transportation, and that the evidence does not show that these receivers were guilty of any negligence in detaining said cattle at Comanche, nor in the condition of its pens at said place, nor was there any evidence of the market value of said cattle at the time they should have arrived at their destination if the receivers had exercised ordinary care after receiving the same, which time of arrival was Wednesday morning, nor was there any evidence of the difference in the market value between Wednesday morning and the time the cattle were sold, to wit, Thursday morning.

The evidence shows that the cattle arrived at Comanche from Lampkin before Receivers' north-bound cattle train reached Comanche. Plaintiff Miller testified upon this point as follows:

"No, we didn't unload the cattle, because we didn't want to break the seal, and we didn't want to unload. We wanted to go to Ft. Worth; we wanted to be transferred to the Frisco and go on to Ft. Worth, but the agent of the Frisco said they didn't have any orders to take us, and the Cotton Belt unloaded us at their pens. Yes, the Cotton Belt had time to have set the car before the Frisco went north, but did not do so. It was about 30 minutes after I got to the depot before the north-bound Frisco came in. The cattle were unloaded in the Frisco pens about 9 o'clock next day (Tuesday), and remained in there for about 12 hours."

Plaintiff White testified:

"Yes, the Cotton Belt agent told us that we would get here [Comanche] in time to get the Frisco that night. We expected to be transferred to the Frisco, but they backed us back to the stock pens and unloaded us. I don't know what was said; a boy was there acting as agent. We went over to the Frisco and asked him what about it, and he said he had no orders to take our cattle. When the Frisco run in he asked the conductor if he was going to take our cattle, and he said he didn't have any orders to take us. The agent didn't come until we went to the Frisco. Miller had left and went back, and the conductor said he had no orders to take us. Yes, I told the agent I wanted the cattle to go; I asked him if there wasn't a switch or something he could come over and get our cattle, and he said he couldn't do it. I don't know how long the Frisco stayed after it got there."

Upon cross-examination by counsel for the Cotton Belt, witness was asked:

"You got here a good while before the Frisco came in, didn't you? A. Yes, sir."

G. W. Jessup, agent for receivers, testified in part:

"I don't know why we didn't take the cattle that night; the train was due here at 9:13 o'clock at night and due in North Ft. Worth, or West Yards, at 5:15 a. m."

It was agreed that R. N. Davis, conductor for Receivers' train, handled the shipment in question from Comanche to Ft. Worth, and if present would testify that he received the cattle on December 16, 1913, 10:30 p. m. (Tuesday), that they arrived at West Yards, 10:40 a. m., December 17th (Wednesday).

[3, 4] We think the evidence is sufficient to justify a finding of a negligent refusal or failure of the Receivers' Railway to accept the shipment on the night of Monday, the 15th. If this negligence concurred with the negligence of the Cotton Belt in failing to deliver on the transfer track the shipment in question, both railway companies would be responsible for delays and the consequent damages proximately resulting from such negligence. G., C. & S. F. Ry. v. Terry et al., 89 S. W. 792; Pecos River R. Co. v. Latham, 40 Tex. Civ. App. 78, 88 S. W. 392; T. & P. Ry. Co. v. Slaughter, 37 Tex. Civ. App. 624, 84 S. W. 1085.

[5] If the failure of the defendant Receivers' Railway to receive the shipment in question when tendered on Monday night was negligence, as the jury was justified in finding, and such negligence prevented the shipment of the cattle Monday night to Ft. Worth, the defendant receivers would not be permitted to excuse themselves from liability on the ground that they did not actually receive the shipment until the following day. Therefore the second assignment is overruled.

In paragraph 5 of its main charge the court charged the jury as follows:

"If you find for the plaintiffs as above instructed against both defendants, you will apportion such damages, if any, according to and in proportion to the respective liabilities of said defendants, and state in your verdict the

amount of damages, if any, you find against each of said defendants."

This charge is objected to in receivers' third assignment:

"Because said charge fails to inform the jury what the liability of the two defendants are or to afford them any guide in assessing such damages against the several defendants."

The following special charge, omitting formal parts, was given at the request of receivers:

"The undisputed evidence in this case shows that plaintiffs' live stock was shipped over the line of the defendant receivers from Comanche, Tex., to North Ft. Worth, Tex., under a written contract, under the terms of which contract it was agreed that said defendant carrier would only be liable to the plaintiffs for any damages which might occur to their live stock in said shipment on the line of said carrier, or as the result of the negligence of said carrier, or that of its employés. I therefore instruct you in this case that the plaintiffs herein cannot recover against the carrier above named for any damages except such as the evidence, if any, in this case might show was occasioned by the negligence of said carrier, or that of its agents or employés."

[6] We think any deficiency in the main charge was cured by the giving of this special charge, and the third assignment is overruled. It appears the court gave every special charge tendered.

In the fourth assignment it is claimed the verdict of the jury is contrary to and unsupported by the evidence, as against the receivers, in that:

"The undisputed evidence shows that said cattle were not received for shipment by these receivers until Tuesday about 10 a. m., contract of shipment being made that same afternoon, and that the earliest market said cattle could have been delivered upon at Ft. Worth after such receipt was Wednesday morning, and there is no evidence in the record of the difference in the market value of said cattle on Wednesday's and Thursday's market, but only as to the difference in Tuesday's and Thursday's."

From what we have said in the discussion of prior assignments as to the concurring negligence of defendants causing the delay at Comanche, we hold that the proper measure of damages was to be determined, in part, by the difference in the market value on Tuesday, the date when said shipment would have reached the market except for the delay occurring at Comanche, and that between Comanche and Ft. Worth, and the Market value on the day on which they were sold, the evidence showing that the cattle were sold on the first market after reaching Ft. Worth.

The fifth assignment urges error in the way of failure of proof to sustain the verdict, as to the item of damage of 10 cents per hundredweight in damaged selling appearance on a total of 42,110 pounds or $42.-11. We are referred to the fact that plaintiff Miller testified:

"When I testified that the cattle were damaged 10 per cent. in selling appearance, I had reference to their condition when they arrived at Ft. Worth Wednesday afternoon. * * * Yes, sir; the cattle looked better the next morn-

ing. Yes, sir; as a whole, they all looked better the next morning."

Appellant receivers claim that as there was no evidence as to the amount of improvement in selling appearance on Thursday, when the cattle were sold, over Wednesday, when they arrived at Ft. Worth, and as the jury found the full amount claimed, that the verdict is excessive to the extent of the improvement in selling appearance of the cattle on Thursday over Wednesday.

[7, 8] This, at most, would only be a question of requiring a remittitur, and as the appellant receivers have failed to show that the verdict is materially excessive, if at all, and, as the burden is on the appellant to show probable injury as well as error (K. C., M. & O. Ry. v. Beckham, 152 S. W. 228, and other cases cited in Vernon's Annotated Civil Stats. under article 1628, p. 904, § 8), the assignment is overruled.

[9] The sixth and seventh assignments allege excessiveness of verdict as to the one hog shipped. The allegations, as will be noted, as to the hog included in the car shipped in the name of H. L. White, are "25 cents per hundredweight" and "50 pounds per head shrinkage." The evidence shows that the hog weighed at time of shipment 532 pounds, and at time of sale 470 pounds, making a loss of 62 pounds. Allowing 50 pounds for shrinkage, as pleaded, for improper handling, would leave only the question of 25 cents per hundredweight on 470 pounds to decline in market from Tuesday to Thursday undetermined by the verdict. Such amount is too small to even require a remittitur in our opinion, on the theory of lex non curat de minimis, and therefore it becomes immaterial that the hog in fact was sold on Wednesday instead of Thursday, as alleged in the petition.

[10, 11] The eighth assignment is leveled at the action of the court in admitting the answer of the plaintiffs while testifying in their own behalf to the following question:

"Can you, by looking at this account sales, tell what the difference in the market value of the cattle in question were on Thursday, the 18th of December, 1913, and on Tuesday, when you should have gotten there?"

To which the witnesses answered, showing the difference in the market value of each kind of stock included in the shipment on Tuesday and on Thursday. While that part of the question, to wit, "when you should have gotten there," was undoubtedly improper, as claimed by appellant, as calling for an expression of opinion and a conclusion on a mixed question of law and fact, as held in a number of cases, including the Roberts Case in 101 Tex. 421, 108 S. W. 808, and G., C. & S. F. Ry. Co. v. Bogy, 178 S. W. 577, yet the answer, being a mere statement of the difference in the market value of the cattle and hog on the two days mentioned, we think any impropriety or error is thereby rendered harmless. Therefore we overrule

this assignment, and likewise the ninth, which attacks the action of the court in permitting the plaintiffs to testify as to the difference in the market value of the cattle in question on Tuesday, the 16th, and Thursday, the 18th, rather than stating what the market value was on the two dates mentioned and leaving to the jury the question of determining the difference.

[12, 13] Since the market value on the 18th was established practically beyond question by the introduction of the account sales, it being agreed by all parties that the same showed the market value of the different animals sold, the answer constituted merely a shorthand rendition of testimony as to the market value on the two days mentioned. If appellant desired to test the accuracy of the witness as to the stated percentage or depreciation, he could have done so, and, having failed so to do, he cannot here complain of the answers made. T. & P. Ry. Co. v. Fambrough, 55 S. W. 188–190; St. L., I. M. & S. Ry. v. Boshear, 108 S. W. 1032.

For reasons heretofore given we overrule the tenth assignment of appellant receivers.

[14] Appellant Cotton Belt's first assignment is directed to the refusal of the court to give a peremptory instruction in its behalf, and for the reasons given in discussing the like question raised by its coappellant, and for the further reason that the testimony shows that there was considerable delay in going from Lampkin to Comanche, a trip of 21 miles, requiring some three hours, and further that the evidence shows that the Cotton Belt had time to place two cars containing appellees' live stock on the transfer track, from which it would have been the duty of the Receivers' Railway to take them, and that if it had so placed the cars, and said cars had been attached to the train of receivers, which came into Comanche after the arrival of the Cotton Belt train, said shipment would have, in due course, reached North Ft. Worth in time for Tuesday's market, we think the assignment is without merit. J. C. Gayle, conductor on the Cotton Belt, testified:

That whenever they had a car to be carried on the Frisco, they put it on the transfer track, and that was all they had to do. "Yes, sir; the transfer is made by putting the car on the transfer track. No, I don't think I left the car on the transfer track. I had plenty of time to have left it on the track. Yes, according to the agreement between the Cotton Belt and Frisco, if I had left it on the transfer track that would have been a delivery. Yes, if I had pushed them up across the road or street, that would

have been a delivery. Yes, sir; I understood this to be the rule."

[15] Nor do we find any merit in appellant Cotton Belt's second specification of error that the verdict is not supported by the evidence, in that the undisputed evidence in this case showed that the defendant only agreed to carry the plaintiff's live stock to Comanche, and there to deliver it to its connecting carrier, and the undisputed evidence further shows that the defendant did safely carry said live stock to Comanche in time for said cattle to have been carried to Ft. Worth on the night of the 15th, and that said receivers failed and refused to accept said shipment for transportation on said night.

In addition to the testimony of the conductor, quoted above, plaintiffs testified that instead of placing the two cars of cattle on the transfer track, appellant Cotton Belt's conductor ordered the said two cars back to its pens there to be unloaded. And the evidence further shows that plaintiffs were using their utmost endeavors on the agents and employes of both roads to get their cattle shipped through to Ft. Worth Monday night. The evidence shows that on their arrival at Comanche the cattle looked "all right; not particularly damaged or drawn." Plaintiff Miller testified:

"Yes, sir; the agent at Lampkin told us we would get the Frisco train that night. We told him we didn't want to be billed out if we couldn't make it."

Plaintiff White testified:

"Yes, we tried to get the Cotton Belt to transfer us that night, but they did not, and the next morning about 9 o'clock they were unloaded in the Frisco pens. Yes, they were unloaded in the Cotton Belt pens, reloaded, and then unloaded in the Frisco pens."

From the verdicts returned against each of the defendants, the jury evidently concluded from the evidence that the appellant Cotton Belt was largely responsible for the delay at Comanche, and that if it had placed the cars on the transfer tracks, where it is admitted they should have been placed, in order to constitute a tender of the shipment to the receivers' line, that the main part of the damage would have been avoided.

Without discussing separately each of the other six assignments contained in appellant Cotton Belt's brief, we feel it sufficient to say that we have carefully examined the same and find no reversible error.

All assignments are overruled, and the judgment against each defendant is affirmed.