TEXAS & N. O. R. CO. v. HOUSE.
(No. 2067.)

Court of Civil Appeals of Texas. Texarkana.
Jan. 16, 1919.)

1. RAILROADS ⬤➤398(3)—INJURIES ON TRACK
—LAST CLEAR CHANCE—SUFFICIENCY OF
EVIDENCE.

In section foreman's action against his railroad for death of his wife, struck just as she was escaping from railroad bridge on which they had been caught by approaching train, evidence held sufficient to support finding that railroad engineer and fireman were negligent, in that they did not use due care to avoid injuring plaintiff's wife after they discovered her peril.

2. RAILROADS ⬤➤390—INJURIES ON TRACK—
LAST CLEAR CHANCE.

Though wife of railroad section foreman was negligent in going upon bridge with her husband, where they were caught by a train and forced to seek to escape by retracing their steps, which resulted in wife's death, railroad was liable; engineer and fireman having failed to exercise due care to avoid injuring wife after discovering peril.

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

Action by L. I. F. House against the Texas & New Orleans Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Appellee was one of appellant's section foremen, and with his wife lived in a house provided by appellant for its section men, situated on its line of railway 1½ or 2 miles east of Reklaw. Appellee got his mail at the post office in Reklaw, and his orders as section foreman from a mail box appellant maintained there. In going from their home to Reklaw, and from Reklaw to their home, appellee and his wife used appellant's track and right of way as a road, and same were also so used by other parties so that "there was," appellee testified, "a well-beaten path between the rails." Forming a part of appellant's roadbed and track, a half mile or more east from Reklaw, was a bridge about 137 feet long. Still farther east appellant maintained a "whistling board," where its rules required its employés in charge of locomotives moving west to blow the locomotives' whistles. Witnesses did not agree as to the distance between the bridge and the whistling board. The distance was stated by one witness to be "500 or 600, or maybe 1,000, feet," and by another to be "1,500 or 1,800 feet, maybe 2,000." East of the bridge the track curved southeast, and at a distance of about 400 feet entered a cut about 5 feet deep and 200 or 300 feet long. Farther east the track passed through a deep cut. On Sunday, January 27, 1918, appellee and his wife, walking east from Reklaw to their home, had

reached a point about the middle of the bridge referred to when they saw one of appellant's passenger trains approaching from the direction they were traveling. Appellee testified that the train had passed west of the whistling post 400 or 500 feet when he saw it. He at once undertook by waving his hand to advise the parties in charge of the locomotive of the dangerous position he and his wife were in, and at the same time he and his wife turned back, and, walking as rapidly as they could, endeavored to get off the bridge. It seems that they succeeded in getting off the bridge, but that appellee's wife, falling on the track about the time she got off the bridge, was struck by the locomotive and thrown down the embankment forming appellant's roadbed at that point, receiving injuries which resulted in her death February 26, 1918.

On the theory that the death of his wife was due to negligence of appellant's employés in charge of the locomotive, appellee sued and recovered the judgment for $4,500 from which the appeal is prosecuted. On special issues submitted to them the jury found: (1) That the employés in charge of the locomotive failed to exercise ordinary care in keeping a lookout for persons on the track and bridge, and that such failure was the proximate cause of the injury to appellee's wife. (2) That said employés failed to blow the whistle at the whistling post. (3) That their failure to blow the whistle was negligence, and such negligence was the proximate cause of the injury to appellee's wife. (4) That said employés saw appellee and his wife on the bridge and their peril in time to have avoided injury to them by the exercise of ordinary care. (5) That the failure of said employés to exercise such care was negligence. (6) That neither appellee nor his wife was guilty of contributory negligence in going on the bridge as they did. (7) That contributory negligence on the part of appellee and his wife was not the proximate cause of the injury the latter suffered. (8) That $4,500 would compensate appellee for the pecuniary loss he suffered by the death of his wife. On the evidence and findings of the jury the court rendered judgment in appellee's favor as stated above.

Guinn, Imboden & Guinn, of Rusk, and McMeans, Garrison & Pollard and Baker, Botts, Parker & Garwood, all of Houston, for appellant.

Norman, Shook & Gibson, of Rusk, for appellee.

WILLSON, C. J. (after stating the facts as above). Appellant insists its employés in charge of the locomotive did not owe to appellee and his wife a duty either to warn them of the approach of the train, by sounding the whistle at the whistling board east of the bridge, or to keep a lookout for them

on its track. It further insists, if said employés owed such duty and negligently failed to discharge it, that appellee and his wife were themselves guilty of such negligence as deprived them of a right to complain of its failure. It further insists it did not appear that said employés discovered the perilous position of appellee and his wife in time by the exercise of due care to have avoided the injury to the wife. Therefore, it concludes, the trial court erred when he refused its request to instruct the jury to return a verdict in its favor.

[1] Consideration of the record has convinced us that, whatever may be the merit of the other contentions, the one questioning the sufficiency of the testimony to support a finding that appellant's said employés were guilty of negligence, in that they did not use due care to avoid injuring appellee's wife after they discovered her in the perilous position she occupied on the bridge, is untenable.

It appeared from testimony that appellant's track ran through a deep cut 1,000 or more feet southeast of the bridge, and from the cut toward the bridge curved northwest, so that the engineer's view of the track as the train moved towards the bridge was obstructed by parts of the locomotive. The engineer testified that he was keeping a careful lookout ahead, and saw appellee and his wife as soon as a person occupying the position he occupied on the engine could have seen them. He said he was within 200 or 300 feet of them before he saw them. Other testimony established with reasonable certainty that he could have seen appellee and his wife when he got within 560 feet of them. The fireman's view was obstructed as the engineer's was, and it was shown that in the position he occupied on the locomotive he could have seen appellee and his wife before or about the time the locomotive emerged from the deep cut referred to, or when the locomotive was 1,000 or more feet from the bridge. The fireman, however, testified that he was working with the injector when the engine emerged from the cut, and that he did not see appellee and his wife until after the engineer discovered them. Appellee testified that, traveling at the speed it was moving, the train could have been stopped in from 300 to 500 feet. Appellant's witness Delafield "guessed" it could be stopped in from 200 to 300 feet by using the emergency brake. The engineer testified it could have been stopped in from 600 to 800 feet, and the jury might have found, from his estimate of the distance he was east of appellee and his wife when he first saw them and the distance the train was west of them when it stopped, that he actually stopped the train within 537 feet of the place where he was when he first saw appellee and his wife. The jury had a right to conclude from testimony referred to that the engineer, in the discharge of his duty to keep a lookout ahead, should have discovered appellee and his wife in the perilous position they occupied on the bridge when he was as far as 560 feet east of them. From the fact that he could have then discovered them that far away, and from his testimony that he did discover them as soon as it was possible for one in his position to do so, the jury might have inferred that he did discover them when he was 560 feet east of them; and they might have inferred, from the fact that he actually stopped the train within 537 feet of the place he was at when he first saw them, that he did not use the care he should have used, otherwise he would have stopped the train before it reached the place where appellee's wife was when she was injured. So the jury might have inferred, from the fact that it was the duty of the fireman to keep a lookout ahead, and especially so at that point, because of the bridge around the curve which he could see as the locomotive emerged from the cut, but which the engineer could not see until he got within 560 feet of it, that he did keep such a lookout, notwithstanding his testimony to the contrary, and that, keeping it, he discovered the perilous position of appellee and his wife in ample time to have had the engineer stop the train before it reached the bridge. Freeman v. Jamison, 138 S. W. 1097; Railway Co. v. Howard, 200 S. W. 1159; Railway Co. v. Finn, 107 S. W. 94; Railway Co. v. Tinon, 117 S. W. 936.

[2] The conclusion reached renders it unnecessary to determine whether the testimony warranted findings that the employés in charge of the locomotive were guilty of negligence in other respects, and if it did demand a finding that appellee's wife was herself guilty of negligence, for negligence on the part of said employés in the respect indicated by testimony we have referred to warranted a finding that appellant was liable to appellee as determined by the judgment, without reference to whether said employes were guilty of negligence in other respects or not, and even though appellee's wife may herself have been guilty of negligence.

The assignments not in effect disposed of by what has been said have been considered. It is plain, we think, that neither of them presents error requiring a reversal of the judgment. Therefore it is affirmed.