GALVESTON, H. & S. A. RY. CO. v. COOK.
(No. 473.)

(Court of Civil Appeals of Texas. Beaumont. June 12, 1919. On Motion for Rehearing, July 2, 1919.)

1. APPEAL AND ERROR &⇒742(5) — ASSIGNMENTS OF ERROR—PROPOSITION.

Where the assignment of error complained of refusal to give peremptory instruction for defendant on the sole ground that the negligence was not shown to be the proximate cause of the injury propositions that the evidence showed contributory negligence are not germane to the assignment and cannot be considered.

2. RAILROADS &⇒398(1)—INJURY TO PERSON ON TRACK — SUFFICIENCY OF EVIDENCE — PROXIMATE CAUSE.

In an action for injuries to a pedestrian struck by a train, admittedly running faster than permitted by city ordinance, evidence that a train running at the lawful speed could have been stopped after the plaintiff's danger was seen, or that plaintiff could have cleared the track, is sufficient to warrant the jury's finding that the negligence was the proximate cause of the injury.

3. EVIDENCE &⇒587, 595—WEIGHT—CIRCUMSTANTIAL EVIDENCE.

Direct evidence on an issue is not required by law, but juries can indulge all reasonable inferences from facts revealed by the evidence or deducible by unbiased and rational minds from such facts.

4. RAILROADS &⇒389(5)—INJURY TO PERSON ON TRACK—PROXIMATE CAUSE—SPEED.

For the negligent speed of a railroad train to be the proximate cause of an injury to one near the track it is not necessary that the operators of the train should have anticipated injury occurring in the particular manner it did occur, but it is sufficient that they should have anticipated that some injury might occur.

5. RAILROADS &⇒373—INJURY TO PERSON ON TRACK—VIOLATION OF SPEED ORDINANCE.

The violation of an ordinance limiting the speed of a railroad train to six miles an hour, attended with injury to one near the track as a consequence thereof, is negligence per se.

6. RAILROADS &⇒389(5)—INJURY TO PERSON NEAR TRACK—PROXIMATE CAUSE—SPEED.

Where plaintiff's peril could have been seen in time to have stopped a train running at a lawful rate of speed the jury may infer that the train operatives would have performed their duty to keep a reasonable lookout, and have discovered his peril, so that the speed was the proximate cause of the injury.

7. RAILROADS &⇒386—INJURIES TO PERSON ON TRACK — CONTRIBUTORY NEGLIGENCE — ESCAPING DANGER FROM FRIGHTENED HORSE.

Where plaintiff was hemmed in between the wheels of a wagon hitched to a horse, which was frightened at approaching train, his attempt to escape by his only avenue across the railroad track was not contributory negligence.

8. APPEAL AND ERROR &⇒719(6) — REVIEW — FUNDAMENTAL ERROR—SUFFICIENCY OF EVIDENCE.

The appellate court cannot, in the absence of an assignment of error, review a finding that plaintiff was contributorily negligent as being unsupported by the evidence, such error not being fundamental.

9. APPEAL AND ERROR &⇒866(3)—REVIEW—SUFFICIENCY OF EVIDENCE.

On review of refusal of peremptory instruction the only question is whether there was no evidence as a matter of law, not the weight or sufficiency of evidence as a matter of fact.

10. NEGLIGENCE &⇒136(28) — CONTRIBUTORY NEGLIGENCE—IMPULSIVE ACT.

Where one under the impulse of fright, in a sudden situation of danger, chose an unwise alternative he cannot, as a matter of law, be held contributorily negligent therefor.

11. EXCEPTIONS, BILL OF &⇒56(1)—AUTHENTICATION—OBJECTIONS TO INSTRUCTIONS.

A purported bill of exceptions showing that objections were presented to the court before the charge was read to the jury, which is not approved by the judge or authenticated in any manner, but merely filed by the clerk, is not sufficient under Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, to present objections to instructions for review.

12. TRIAL &⇒352(4)—SPECIAL ISSUE—APPLICABILITY TO EVIDENCE.

A special issue as to whether the cause of the injury was inevitable accident was properly

refused where defendant's train was admittedly running at a speed forbidden by ordinance.

**13. TRIAL** ☞351(5) — SPECIAL ISSUES — UNAVOIDABLE ACCIDENT.

The issue of unavoidable accident is comprehended within issues as to negligence as the proximate cause of the injury, being the negative thereof, and defendant is not entitled to have it separately submitted.

**14. APPEAL AND ERROR** ☞1062(2) — HARMLESS ERROR—REFUSAL OF SPECIAL ISSUE—EVIDENTIAL ISSUE.

A special issue as to whether plaintiff was warned of the approach of the train is merely evidential on the issue of contributory negligence, and refusal to submit it is not prejudicial where the jury found freedom from contributory negligence.

**15. APPEAL AND ERROR** ☞1032(1) — HARMLESS ERROR—BURDEN TO SHOW ERROR.

The burden is on appellant to show injury as well as error in the refusal of a special issue requested by him.

**16. APPEAL AND ERROR** ☞1062(2)—HARMLESS ERROR—SUBMISSION OF ISSUES—UNDISPUTED FACT.

Refusal to submit a special issue whether plaintiff was injured substantially as alleged is not prejudicial where that fact was established by undisputed evidence.

**17. APPEAL AND ERROR** ☞1047(4) — HARMLESS ERROR—REOPENING FOR FURTHER TESTIMONY—FACT ALREADY ESTABLISHED.

Defendant is not prejudiced by reopening of case after the charge to admit testimony that the accident occurred within the city whose ordinance had been introduced in evidence where that fact had already been established by undisputed evidence.

**18. NEW TRIAL** ☞140(3)—EVIDENCE—MISCONDUCT OF JUROR.

Evidence on a hearing for new trial showing that the amount of plaintiff's attorney's fee was mentioned in the jury room, but discussion thereof suppressed by the foreman, *held* to show that the amount of the verdict was not influenced by consideration of the attorney's fee.

**19. WITNESSES** ☞41 — MENTAL INCOMPETENCY.

In an action for personal injuries where there was evidence that plaintiff had lost his memory and power to control his thoughts, but was not actually insane, it was not error to put him on the stand and question him as to relevant matters in his past life, and as to the accident, though at defendant's request plaintiff's wife had, during the trial, intervened as plaintiff's next friend because of his incompetency.

*On Motion for Rehearing.*

**20. NEGLIGENCE** ☞56(1) — "PROXIMATE CAUSE."

An instruction defining proximate cause as not necessarily the cause nearest in time or physical sequence, but a cause without which the injury would not have happened, and from which the injury or a like injury might reasonably have been anticipated, is substantially correct.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

Appeal from District Court, Harris County; A. R. Hamblen, Special Judge.

Action by E. A. Cook against Galveston, Harrisburg & San Antonio Railway Company. Judgment for the plaintiff, and defendant appeals. Affirmed, and motion for rehearing overruled.

Baker, Botts, Parker & Garwood and McMeans, Garrison & Pollard, all of Houston, for appellant.

Presley K. Ewing, of Houston, for appellee.

BROOKE, J. This appeal is from a judgment of January 26, 1918, against the appellant, in favor of appellee, E. A. Cook, for personal injuries sustained November 29, 1915, on Barron street in the city of Houston, from being struck by appellant's passenger train running eastward on and along such street, whereby he was violently hurled and thrown about 60 feet, and severely and permanently injured.

The gravamen of the complaint was that while plaintiff was standing in the street, a few feet from defendant's track, engaged in a business conversation with a man (Tobe Whitehead) who was seated in a four-wheel wagon, drawn by a horse, the horse became nervous and excited at the approach of the train, reared, and plunged, and cut up generally, twisting the wagon in a sort of L or elbow shape, encompassing plaintiff between, so that he, in order to escape immediate and threatened danger from the horse and wagon, was, under the impulse of fright and self-protection, forced to retreat backwards onto defendant's track, and was struck by the train, and suffered injuries which were proximately caused to him (1) by negligence of defendant's employés in charge of the train in running the same, in violation of the city ordinance, at a rate of speed greatly in excess of the limit of six miles per hour, but for which, after they discovered, or ought to have discovered, the cutting up of the horse and perilous position of the plaintiff, the injury would have been avoided, both by the plaintiff clearing the track before being struck and by the stopping of the train before striking him, and (2) by negligence of the defendant's employés in charge of the train in failing to give warning of its approach, either by whistle, as required by statute, or by continuous ringing of the bell, as required both by statute and ordinance, and (3) by negligence of the defendant's em-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ployés in charge of the train in failing to use ordinary care to maintain a reasonable lookout for danger to the public.

The answer pleaded a general denial, and specially set up contributory negligence.

It was no part of plaintiff's case that he was of unsound mind, only that his mental, as well as physical, faculties (and capacity had been impaired so as to decrease his ability to labor and earn money, and entailing upon him great suffering.

The testimony was to the same effect, Dr. F. H. Neuhaus, undisputed by anybody, saying:

"He would not be in a condition that I would call an insane person, or anything of that sort; it is the mental incapacity of the kind I have indicated that I refer to."

Nevertheless, after the physicians and Mrs. Cook had testified, the defendant's attorney, all out of hearing of the jury, claimed that the plaintiff was without capacity to maintain the suit, that the defendant would not be protected by the judgment, and that he would file a plea in abatement, which was never done, and, thereupon, without any claim of surprise by the defendant, the court permitted the wife of the plaintiff, Mrs. E. A. Cook, in order to meet the objection, to alternatively intervene for plaintiff as a person of unsound mind, and the trial proceeded without the jury being advised of the intervention or even knowing what had been done, or that anything had been done in that regard.

The special verdict was as follows:

"(1) Was the plaintiff injured on the occasion in question substantially in the manner alleged?" Answer: "Yes."

"(2) If he was so injured, was the train in question running at the time within the corporate limits of the city of Houston at a greater rate of speed than six miles an hour?" Answer: "Yes."

"(3) If the train was then running at a greater rate of speed than six miles an hour, was such excess of speed beyond six miles an hour a proximate cause, as before defined, of alleged injury to the plaintiff, E. A. Cook?" Answer: "Yes."

"(4) Was the plaintiff E. A. Cook guilty of contributory negligence?" Answer: "No."

"(5) What sum of money, if paid now, will fairly and adequately compensate plaintiff for injuries which he is alleged and proved to have suffered on the occasion in question, if any; taking into consideration exclusively as elements of damage, if proved to be a natural and proximate result of such injuries, (1) mental anguish and physical suffering therefrom, if any, including such as he will in reasonable probability suffer in the future therefrom, if any, and (2) the reasonable value of his lost time therefrom down to the trial, if any, and (3) the reasonable value, if paid now, of his diminished capacity or ability therefrom to labor and earn money in the future, beyond the trial, if any?" Answer: "$15,000."

In connection with the issue of contributory negligence, the court inserted in its charge, at defendant's request, the following:

"In this connection, you are instructed that if you find and believe from the evidence that the plaintiff, E. A. Cook, approached the wagon of Tobe Whitehead, knowing that the street was narrow, and he stopped in close proximity to the track of the defendant company, and that he knew, or had reasonable grounds to know, that a train was likely to approach, and you further find and believe from the evidence that the plaintiff, E. A. Cook, was warned of the approach of the train in time to have avoided the accident, and you further find and believe from the evidence that he, without taking precaution, stepped or backed too close or near the train so as to be struck by the engine, and you further believe that a man of ordinary prudence, in the exercise of ordinary care, would not have done so, then you are instructed that the plaintiff was guilty of contributory negligence, and you will answer the above question, 'Yes.'"

The court defined contributory negligence as follows:

" 'Contributory negligence' is an act or omission on the part of a plaintiff which an ordinarily prudent person would not have done or suffered under the same or similar circumstances, and which, concurring with negligence of the defendant, becomes a proximate cause of alleged injuries."

[1] The first assignment of error complains of the refusal to give a peremptory instruction for the defendant, asked by special charge, specifying the sole ground of the request to be "that plaintiff has failed to show that the defendant company was negligent in any particular which directly or proximately contributed to the plaintiff's injury," nothing whatever being said about contributory negligence as a ground for such request.

The only germane proposition under said assignment is the first proposition, that the peremptory instruction should have been given "under the facts of this case, the speed of the train, though in excess of that permitted by an ordinance of the city of Houston, was not the proximate cause of the plaintiff's injuries."

Appellant's first proposition is as follows:

"The court erred in failing and refusing to give to the jury special charge No. 1, requested by the defendant, which special charge is as follows:

" 'In this case you are instructed that plaintiff has failed to show that the defendant company was negligent in any particular which directly or proximately contributed to the plaintiff's injury; you are instructed to return a verdict for the defendant company.' "

Under this assignment are five propositions, viz.:

(a) "Under the facts of this case, the speed of the train, though in excess of that permitted by an ordinance of the city of Houston, was not the proximate cause of the plaintiff's injuries; therefore the peremptory instruction should have been given."

(b) "The peremptory instruction should have been given because, under the facts proven, plaintiff himself was guilty of such negligence and contributory negligence as precluded a recovery."

(c) "The peremptory charge should have been given for the further reason that it was established by the overwhelming weight and preponderance of the testimony to such a degree as to render any other conclusion wrong that the running of the engine and train at the prohibited speed was not the proximate cause of plaintiff's injuries."

(d) "The peremptory charge should have been given, for the further reason that it was established by the overwhelming weight and preponderance of the testimony, to such a degree as to render any other conclusion wrong, that plaintiff's injuries resulted from his own negligence and contributory negligence."

(e) "The peremptory charge should have been given, for the further reason that it was established by the overwhelming weight and preponderance of the evidence, to such a degree as to render any other conclusion wrong, that plaintiff's injury was not due to the negligence of the defendant as a proximate cause, and, if not caused by the negligence or contributory negligence of the plaintiff, then his injury was due to an inevitable accident, for which neither party is responsible."

On the contrary it is urged:

(a) "Not only was there some evidence raising the issue, and thus necessitating its submission to the jury, but there was abundant evidence warranting the jury in finding proximate cause, particularly as the evidence made it fairly inferable, (a) that if the speed of the train had not been over six miles an hour, the plaintiff would probably have cleared the track before the train struck him, and (b) that the employés in charge of the train would have had ample opportunity to stop the train before striking the plaintiff after the cutting up of the horse and consequent peril to plaintiff became discoverable to them; either of such inferences being sufficient."

(b) "The claim under the second proposition that the peremptory instruction should have been given because the plaintiff was guilty of contributory negligence, cannot be sustained, (1) because the question is not raised by the assignment, both it and the refused peremptory instruction being based solely on the ground of absence of negligence on the part of the defendant contributing to the injury, so that the proposition is not germane to the assignment, (2) because the claim of contributory negligence was in no manner made a ground of the motion for new trial, and (3) because, if the question were reviewed, contributory negligence was at best for the defendant under the evidence an issue of fact for the jury, which they have decided against it."

(c) "The claim under the third, fourth, and fifth propositions, relating to the weight of the evidence cannot be sustained, (1) because the questions are not within the scope of, or germane to, the assignment; (2) because such were not made grounds of the motion for new trial, and (3) because, if reviewed, the same are obviously without merit on the evidence."

[2] The result of the testimony as to the rate of speed at which the train in question was running on this indisputably narrow and populous city street is thus stated in appellant's brief, as follows:

"There is a conflict in the testimony of the witnesses as to the rate of speed of the train, some placing it as high as 30 or 35 miles per hour, and others as low as 12 or 14 miles per hour. However that may be, the undisputed evidence shows the train was moving at a rate of speed in excess of that permitted by an ordinance of the city of Houston then in force, which limited the speed of trains to six miles per hour."

The ordinance of the city of Houston referred to is as follows:

"Art. 1048. It shall be unlawful for any engineer or other person in charge of a locomotive or train to run the same within the corporate limits of the city at a greater rate of speed than six miles an hour, and any person so offending shall, upon conviction before the recorder, be fined in any sum not less than twenty-five (25) nor more than one hundred (100) dollars."

Thus the jury was warranted in finding that the train at the time was running 30 miles per hour; and, in that connection, there was ample direct testimony that when the cutting up of the horse and plaintiff's position of peril, hemmed inextricably in the narrow space he was, became apparent the train was about 250 feet distant, at least 125 feet, with the perilous situation of the plaintiff in plain and unobstructed view of the operatives of the engine. Defendant's own witness, J. E. Walters, who was fireman on the engine of the train in question, and who at the trial was engineer, having been promoted, testified:

"A train of an engine and four cars, like the train that we had, running six miles an hour, can be stopped in about 75 feet with safety to the train and its passengers. At that time we were running about 12 or 14 miles an hour."

W. H. Hartig, plaintiff's witness, a locomotive engineer of long experience, being the only other witness to the point, testified that a train such as that in question, running on a track such as that where the accident occurred, at six miles per hour, could be stopped in a "distance of 20 or 25 feet at most."

From the evidence, it seems that plaintiff was standing on Barron street near its intersection with Bayou street in the city of Houston, with his foot on the hub of a wagon wheel and his back to the train's approach, talking insurance to the driver, Tobe White-

head; the street where he was standing being very narrow, about 30 feet from the track to the fence, and the railroad track at that point straight, with the view unobstructed to a train approaching as the one in question was from the west; and, while the plaintiff was thus conversing, the defendant's passenger train was approaching from the west, running 39 miles per hour, in violation of the city ordinance limiting the speed under penalty to six miles per hour; that when the train reached to within, say, 125 feet to 250 feet from where plaintiff was standing the horse began to wildly cut up, to plunge and rear, and to twist and back the wagon into a sort of elbow shape, in which the plaintiff was caught, placing him in a position of peril, where it was obvious that he would be crushed or trampled to injury or death by the horse and wagon unless escaping onto, or over, the defendant's track; that though his peril was thus visible and obvious to the operatives of the train for such distance, so that presumably operatives of the train would at that distance discover his peril and stop the train to avert injury if they could, yet the train rushed forward, unstopped, striking and injuring him, although the undisputed evidence is that, if running within the lawful rate of six miles per hour, the train could have been safely stopped in such distance, and besides that plaintiff would in that event have probably cleared the track and avoided injury, thus manifesting the proximate connection of the unlawful speed with the injury in both ways.

Steve McCullough, witness for plaintiff, testified:

"When I first saw the horse begin to charge the train was about the next street from Bayou street; the next street (about 250 feet) from that was when the horse commenced charging, about half of the block, I reckon, when the horse commenced charging."

Dan Curry, plaintiff's witness, testified:

"When the horse first began to cut up the train was about one block, I guess, from the store." (The store was at the corner of Bayou and Barron, near which plaintiff was standing.)

Stanley Shaffer, witness for plaintiff, testified:

"When I walked up to the track the train was more than a block from Tobe's horse, and Tobe's horse was charging when I walked up to the track; it was cutting up, trying to run."

Also that the train was distant when the horse commenced plunging, "not quite a block and a half, but it was better than a block."

Clarke Yarborough, witness for plaintiff, testified that he was on Sydnor street, the street west of Bayou street, as the train approached, and further:

"When the train got mighty near even with me, when I was on Sydnor Street, the horse was cutting up; the horse cut up until the train hit the gentleman."

[3] Our understanding is that direct evidence is not required by law, and juries are allowed to indulge all reasonable inferences from the facts revealed to them by the evidence, or which unbiased and rational minds can properly deduce from the facts adduced before them. Schmick v. Noel, 72 Tex. 1, 8 S. W. 83; Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963; Farley v. Railway Co., 34 Tex. Civ. App. 81, 77 S. W. 1040; El Paso Foundry Co. v. De Guereque, 46 Tex. Civ. App. 86, 101 S. W. 814; Cotton v. Cooper, 160 S. W. 601.

[4] It is our judgment that in order for the negligent speed to be a proximate cause it was not necessary that the operatives of the train might have anticipated injury as occurring in the particular manner that plaintiff was injured, but at most only some injury in some manner to the public from such violation of the law. See Railway Co. v. Behne, 198 S. W. 680; City of Ft. Worth v. Patterson, 196 S. W. 251; S. W. Tel. & Tel. Co. v. Long, 183 S. W. 421, 427–428; Railway Co. v. McComas, 36 Tex. Civ. App. 170, 81 S. W. 760; Railway Co. v. Paschall, 41 Tex. Civ. App. 357, 92 S. W. 446; Railway Co. v. Southwick, 30 S. W. 596; Shearman and Redfield's Negligence (6th Ed.) vol. 1, § 21a; Wharton's Negligence, §§ 77, 78, pp. 65, 66; 21 Am. & Eng. Ency. of Law (2d Ed.) p. 488.

[5] That the violation of the city ordinance limiting the speed to six miles an hour, attended with injury to one of the public as a consequence, was negligence per se, see Railway Co. v. Brown, 11 Tex. Civ. App. 503, 33 S. W. 146.

[6] That it being the duty of the operatives of the train to keep a reasonable lookout, it was inferable for the jury that the operatives of the train would have taken notice of plaintiff's danger and stopped the train if going at lawful speed, or, indeed, under the circumstances of this case, that they actually made the discovery in time to have done so, although the fireman swore to the contrary, the engineer not being called, see Brown v. Griffin, 71 Tex. 659, 9 S. W. 546, and Railroad Co. v. House, 208 S. W. 359.

That the case is clearly one for liability upon the facts, see Railway Co. v. Penny, 39 Tex. Civ. App. 358, 87 S. W. 718.

In our judgment, with the operatives of the train properly maintaining a reasonable lookout they would have discovered the cutting up of the horse and danger to plaintiff 250 feet, at the least 125 feet, distant, as the jury was warranted to view the evidence; and considering that the train, if running at six miles an hour, could easily have been stopped within such distance before striking plaintiff, it follows, with unerring demon-

stration, that but for the unlawful act in running the train at a rate of speed exceeding six miles an hour, it was open to the jury to find that the injury to plaintiff could and would have been avoided, even irrespective of the further circumstance that plaintiff would probably, with the additional time lawful speed would have given him, have cleared the track before being struck. If the unlawful excess speed, admittedly negligence, was cause at all of the injury it was plainly a direct and immediate cause, without which the injury would not have happened, and which should have been anticipated. Railway Co. v. Paschall, 41 Tex. Civ. App. 357, 92 S. W. 446; Railway Co. v. McComas, 36 Tex. Civ. App. 170, 81 S. W. 760; Railway Co. v. Carlin, 111 Fed. 777, 49 C. C. A. 605, 60 L. R. A. 462; Smith v. London, etc., R. R. Co., 6 C. P. 14.

It seems to be laid down as a principle that when it has once been determined that there is evidence of negligence the person guilty of it is equally liable for its consequences, whether he could have foreseen it or not.

If the train had then been running at six miles an hour the injury would have been avoided. The undisputed evidence shows that the threatened danger to plaintiff was open and visible to the employés in charge of the train for sufficient distance, if running at six miles an hour, for the train to have been stopped before striking the plaintiff, and for him to have probably cleared the track. It may be observed that the plaintiff, in this case, was impulsively acting for self-protection in retreating when the train struck him, to avoid the sudden peril of being trampled or crushed to death by the unruly horse, just as one in his environment might reasonably be expected to do, and as the operatives of the train under the circumstances might be held to have reasonably anticipated he would do from the time his dangerous situation was discovered to them.

[7] The testimony reflects that the jury were warranted in concluding that, beginning at the time he first had reason to apprehend danger, that is, when the horse began to cut up and rear and plunge, the appellee was immediately hemmed in so that his only avenue of escape was retreat backwards onto the railroad track, and this conclusion, so far from convicting the plaintiff of negligence, tended most strongly to exonerate him from same.

Steve McCullough, witness for plaintiff, testified:

"Mr. Cook was facing back to the railroad, talking to Toby Whitehead, and Toby was in the wagon talking to him. * * * While Mr. Cook was getting back the horse was charging towards him; he was standing right in the bend, you know, and he was jumping back from the horse, and he jumped back too far, and the cylinder picked him up. At the time he was go-

ing back, the horse was charging him. At the time the train was coming the wagon was just about between the fence and the railroad track. The horse was charging, scared of the train; he was jumping backwards and forwards, and running and jumping backwards and forwards right up and down the street, and Mr. Cook was between the horse and the railroad."

Another witness, Stanley Shaffer, testified:

"When the horse was cutting up Mr. Cook was kind of in the elbow of the wagon, trying to get around him. The hind end of the wagon was about two feet from the track."

Clarke Yarborough testified:

"When I first observed the horse cutting up he was backing, the rear end of the wagon was going towards the track."

The testimony seems to be that Cook had no intimation that the horse would frighten at an approaching train until he began to cut up, which instantly put him in the position of peril he occupied. Tobe Whitehead testified:

"This horse I was driving had never gotten scared of a train before."

He also testified:

"I spoke to Mr. Cook that the train was coming; I told him, 'Here comes the train.' He had his foot up on the wagon, and I drove up and he went on around the wagon."

It seems that the plaintiff was entitled to rely upon the performance by defendant of blowing the whistle and ringing the locomotive bell, as required by the statute and ordinance. The question of contributory negligence was, under the evidence, an issue of fact for the jury, which they have decided against the appellant.

[8] This court could not, in the absence of an assignment of error raising the question, review the finding by the jury on contributory negligence as unsupported by the evidence, it not being fundamental error. Searcy v. Grant, 90 Tex. 97, 37 S. W. 320; Houston Oil Co. v. Kimball, 103 Tex. 94, 103, 104, 122 S. W. 533, 124 S. W. 85.

That the finding by the jury of the absence of contributory negligence cannot be reviewed as unsupported by the evidence where, as here, submission of such issue as one of fact was not objected to, nor made a ground of the motion for new trial, see Gillespie v. Williams, 207 S. W. 975; Ellis v. Brooks, 101 Tex. 597, 102 S. W. 94, 103 S. W. 1196; Western Union Tel. Co. v. Hartfield, 138 S. W. 418; Railway Co. v. Owens, 58 Tex. Civ. App. 177, 124 S. W. 210.

[9] It seems to this court that the only question for review under refusal of a peremptory instruction is whether there was no evidence as a matter of law to go to the jury on the challenged issue, and not as to

its weight or sufficiency as matter of fact to support the finding. See Choate v. Railway, 90 Tex. 88, 36 S. W. 247, 37 S. W. 319; Id., 91 Tex. 416, 44 S. W. 69; Daugherty v. Wiles, 207 S. W. 900.

Therefore the question of contributory negligence is not open for review, and, in testing the actionable negligence of the defendant, the instant of time when the horse began to cut up, when the danger to plaintiff became apparent, or should have been taken notice of by the train operatives, is the point requiring active diligence on the part of such operatives to avoid injury.

If these operatives could assume that the horse would not frighten, and if no danger of injury could have been anticipated from the excess speed until the horse did begin to cut up and create peril for plaintiff, so in like manner might the plaintiff assume that the horse would not frighten, and that he was hence free of danger until the horse did begin to cut up, when, as we have seen, it was too late for him to extricate himself from the position of peril in which he was thus placed, and which he would not previously have reasonably anticipated. It was certainly competent, in this state of facts, for the jury to acquit him of contributory negligence, as it did by a specific finding to that effect.

[10] Even if it could be said, which it cannot be, that plaintiff under the impulse of fright, in the sudden situation of danger in which he found himself placed, chose the unwise alternative, it would be impossible, as matter of law to predicate negligence on that consideration, for, as said by Mr. Justice Brown, in I. & G. N. Ry. Co. v. Neff, 87 Tex. 309, 28 S. W. 286:

"When prudence itself is destroyed and judgment yields to sudden impulse, when there is neither time nor capacity to reflect, how can one man say what a man, prudent under ordinary circumstances, would do if he should be so situated?"

The assignment is overruled.

[11] Objection is made to a consideration of the second, sixth, seventh, eighth, and ninth assignments, because the purported objections to the charge upon which the assignments are predicated are in no manner authenticated, so as to show that such objections were presented to the court as required by the statute in such case. The record contains purported objections to the court's charge, including those upon which the assignments are based, but such are not signed by the judge, or in any manner authenticated, being merely filed by the clerk.

The record contains a purported bill of exceptions No. 1, undertaking to show that the objections were presented to the court before the charge was read to the jury, but such purported bill was not approved or signed by the judge, and was in no manner authenticated, being merely filed by the clerk.

The challenged assignments of error cannot be considered under article 1971, Vernon's Sayles' Texas Civil Statutes 1914, providing that the objections to the charge shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived. See Railway Co. v. Dickey, 108 Tex. 126, 187 S. W. 184, holding:

"The amendatory act is silent with respect to the manner in which it is to be evidenced of record what objections were made to the general charge of the court, and that those made were presented to the court before the reading of the charge to the jury, as is plainly required by amended article 1971. To accomplish the purpose of the amendatory act in its relation to the general charge there should, of course, be made authentic record that the objections to the general charge urged on the appeal were in fact presented to the trial court, and presented before the charge was read to the jury."

That the file mark indicates nothing as to what was done concerning the purported objections or purported bill of exceptions, nor do the statements of counsel in the record, in the absence of judicial authentication, see Railway Co. v. Worcester, 45 Tex. Civ. App. 501, 100 S. W. 992; Michael v. Yoakum, 30 S. W. 1076. In the latter case, the following language is found:

"It is the action of the judge, in connection with the charges, that is complained of as error, and there must be something in the record to show that the charges have been called to the attention of the judge, and that action has been taken by him in regard to them, before errors assigned in connection with them will be entertained by an appellate court. The file mark indicates nothing but a ministerial act on the part of the clerk."

In Hodde v. Susan, 63 Tex. 308, the court says:

"The statement of counsel, in a motion for new trial, to the effect that the charge was asked and refused, cannot be accepted as evidence of the fact. The court may have overruled that ground for a new trial for the reason that it disagreed with counsel as to the alleged fact of refusal."

The second assignment of error raises the same question as the first assignment, claiming that the undisputed evidence showed that the excess of speed was not a proximate cause, but the only proposition thereunder asserts simply that the overwhelming weight and preponderance of the evidence showed the absence of such proximate cause to an extent to render any other conclusion wrong.

In answer to the second assignment and proposition, is submitted the first and third counter propositions to the first assignment

of error, with the statements, authorities, and argument in support thereof.

The third, fourth, and fifth assignments of error are predicated upon the alleged refusal of special issues claimed to have been asked by the defendant. Objection is made to a consideration of these assignments, because special issues, not being within the recent practice acts relating to special instructions or charges, are governed by the general statute with respect to bills of exception; hence, there being no bill of exceptions or its equivalent in the record showing that these issues were seasonably presented and asked before the court's charge was read or given to the jury, they cannot be considered.

The record as to the three special issues made the subjects of the assignments in question, in addition to the filing by the clerk, merely shows "Refused and excepted to. A. R. Hamblen, Judge." The record does not show when the requests were made, whether before or after the court's charge was given to the jury, but if the proceedings are inserted in the transcript in the order of time, then such requests were made after the charge was given to the jury.

[12] The third assignment of error complains of the refusal to submit the following special issue requested by defendant:

"Was the injury sustained by the plaintiff, E. A. Cook, the result of an unavoidable accident?"

"By the term 'unavoidable accident' is meant an accident that could not reasonably have been foreseen or anticipated as likely to occur."

The counter proposition to this assignment of error is as follows:

"The refusal of the issue as defined imports no error open to complaint, (1) because the request as made was incorrect and inapplicable to the case; (2) because the same was substantially covered, only in different terminology, by the issue of proximate cause as defined and submitted, and (3) because, in view of the jury's finding, the refusal of the issue was not calculated to prejudice the defendant or to probably produce an improper judgment."

The jury found that the "excess of speed beyond six miles an hour was a proximate cause as before defined of alleged injury to the plaintiff, E. A. Cook." Appellant concedes in its brief:

"There is a conflict in the testimony of the witnesses as to the rate of speed of the train, some placing it as high as 30 or 35 miles per hour, and others as low as 12 or 14 miles per hour. We frankly admit that the engine which struck and injured the plaintiff was being run at a rate of speed in excess of that permitted by an ordinance of the city of Houston, and that this was negligence as a matter of law."

[13] The issue asked was incorrect and misleading in not negativing negligence, and was inapplicable to the case because negligence in running at the excess speed is conceded. Vesper v. Lavendar, 149 S. W. 377. That the issue of "unavoidable accident," as defined, being comprehended by the issues submitted, was properly refused, see Ry. Co. v. Hutchens, 35 Tex. Civ. App. 343, 80 S. W. 415; McConkey v. McConkey, 187 S. W. 1101. That the defendant was not entitled to have the issue submitted as an affirmative presentation of the negative side of plaintiff's case, see Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593; Railway Co. v. De Bord, 146 S. W. 668; Railway Co. v. Dodgin, 60 Tex. Civ. App. 283, 127 S. W. 847.

That, since the jury in passing on the issue of "proximate cause" as submitted, necessarily and affirmatively, too, specifically found in substance that the injury "could reasonably have been foreseen or anticipated as likely to occur," it would be impossible to hold that the refusal of the issue probably produced an improper judgment, as an affirmative finding of such refused issue would have been plainly inconsistent with the finding of the jury as made, see Sherrill v. Union Lbr. Co., 207 S. W. 152.

[14] The fourth assignment of error complains of the refusal of the following special issue at defendant's request:

"Was the plaintiff, E. A. Cook, warned of the approach of the train before the accident? Answer 'Yes' or 'No.'"

The only proposition thereunder simply claims that whether "plaintiff was warned or knew of the approach of the train before the accident was a material inquiry, as bearing upon the issue of contributory negligence pleaded by the defendant."

The counter proposition to the fourth assignment is:

"The defendant having specifically pleaded the grounds of contributory negligence upon which it relied, and not having pleaded disregard of warning as an act or ground of contributory negligence, it follows, as conceded by appellant in its proposition, that warning vel non could only have been evidential on the issue of contributory negligence as pleaded, and not of any controlling ultimate fact, and hence properly refused; and, besides, such refusal was harmless as to the result, because, whichever way answered, the pleaded issue of contributory negligence as found in plaintiff's favor would remain undisturbed."

Since the finding of the jury on contributory negligence as pleaded has become conclusive, for want of attack opening same to review, and since the finding on warning could only have been material as evidential on such foreclosed question, and since the finding of the absence of contributory negligence would not be affected by, but consistent with, a finding that warning was given as asked, it follows that the ruling on the issue must here be regarded as harmless in any event.

[15] The fifth assignment of error complains of the refusal of a special issue at defendant's request as follows:

"Were there any other cause or causes, other than the speed of the train, that contributed to the plaintiff's injuries? Answer, 'Yes' or 'No,' according as you find the fact to be."

The only proposition is that the question was raised by the evidence, and the jury should have been permitted to answer it.

The counter proposition to this assignment is:

"No error open to complaint appears, because, whichever way the question might have been answered, the result would not be affected, it being the law that liability arising from a ground of negligence proximately causing an injury is not defeated by concurring causes, culpable or nonculpable, other than contributory negligence, and as to that a specific issue was submitted in terms satisfactory to the defendant and found against it."

The burden is upon the appellant to show injury as well as error, otherwise error, if shown, would be deemed harmless. Railway Co. v. Miller & White, 190 S. W. 819; Surety Co. v. Hardwick, 186 S. W. 804.

The court below was of opinion that the real proximate cause of injury was the unlawful speed of the train, without which the injury could plainly have been avoided, hence that court chose to submit the case for liability solely upon that issue, coupled with the defensive issue of contributory negligence. On the issue of unlawful speed the duty of maintaining a reasonable lookout was a circumstance material for consideration, because, if the jury, though the fireman swore to the contrary, inferred under the circumstances, coupled with the absence of the engineer, that the operatives of the train, being under duty to maintain a reasonable lookout, performed that duty and did so, it went to show, in connection with the other facts developed, that the unlawful excess speed was a direct cause of the injury, without which it would not have happened.

[16] The ninth assignment of error claims error in the submission of the first special issue inquiring whether the plaintiff was injured on the occasion in question substantially in the manner alleged, because it is claimed that the evidence is undisputed that he was so injured.

The counter proposition under this assignment is as follows:

"There is no merit in the assignment, (1) because it is not entitled to be considered as not briefed under the rules; and (2) because it will be impossible to predicate harmful error upon the submission of the question as done."

That the submission of the question was in no event attended with that probable injury necessary for reversal, see Railway Co. v. Hughes, 192 S. W. 1091; Railway Co. v. McMichael, 191 S. W. 186.

[17] The tenth and eleventh assignments of error complain that the court below erred in allowing plaintiff, after the charge had been read to the jury and witnesses had been discharged, to withdraw his announcement and reopen the case so as to introduce evidence that the alleged injury occurred within the corporation limits of the city of Houston.

The counter proposition to these assignments is:

"The assignments are without merit, (1) because, as it developed, the fact that the injury did occur within the corporate limits of the city of Houston had already been proved, and (2) because the matter was within the court's discretion, which was plainly not abused, considering that the court offered to defendant sufficient time to disprove the fact, if it could, of which it refused to avail itself, preferring its exception."

It appears that the witnesses uniformly testified about the blocks and streets, one referring to the various streets mentioned as public streets, and others stating that they lived within a few blocks of the accident, in the city of Houston. The witness W. H. Hartig, who had long been an engineer for the appellant and the Texas & New Orleans Railroad Company, necessarily running over this very crossing where the accident happened, testified as to the space in which, at a given speed, an engine could be stopped with the grade and conditions at this particular crossing, referred to as "on Bayou and Barron streets, here in the city of Houston." Dr. F. L. Barnes, in his testimony, referred to the suit for injuries to plaintiff "pretty near the junction of Barron and Bayou streets, in the city of Houston."

In addition to these convincing circumstances, there was the direct testimony of the witness Clarke Yarborough, who testified:

"I witnessed an accident on or about November 29, 1915, or whatever the day it is, at the corner of Bayou and Barron streets in the city of Houston. * * * I was just a block away when I first saw the horse cutting up, towards town, this way. * * * The horse cut up until the train hit the gentleman. I went up there where Mr. Cook was."

So that the testimony of Cronan, that the injury occurred within the city limits, was merely cumulative of a fact already established without dispute.

[18] The twelfth assignment complains of error of the trial court in not granting the defendant a new trial under its contention that the jury's verdict was increased by considering in their deliberations that the plaintiff's attorneys would receive one-half of the amount awarded.

The counter proposition to this assignment is:

"We maintain that the assignment must be overruled, (1) because the purported testimony of the jurors concerning their misconduct, as taken on the hearing of the motion for new trial, has not been preserved in the record in any manner entitling it to consideration by this court; (2) because this ground of the motion was not seasonably presented, to entitle it to be considered, it being presented on the eve of the court's adjournment, which prevented the obtaining of the testimony of two of the jurors, which might, in any view, have been conclusive against the ground for new trial; and (3) because, sufficient of itself, the court below, under a conflict of evidence well warranting its conclusion, found that in point of fact no juror was influenced in any manner in the amount of the verdict by any talk in the deliberations as to attorney's fees."

Independent of the statement of facts, into which is carried the evidence adduced at the trial, is a purported separate statement of facts into which is apparently carried the testimony of the jurors as taken on the hearing of the motion for new trial; and this statement is agreed to by the attorneys as a full, true, and complete statement of facts adduced in evidence at that hearing, and it is approved by the presiding judge, and in his notation of approval ordered filed as a part of the record. The term of the court at which the trial was had ended February 16, 1918, and the court on that day allowed 90 days after adjournment "within which to prepare and have approved a statement of facts and bills of exception herein." The purported statement of facts as to testimony of jurors was not filed, agreed to, or approved until long after the adjournment of the term, not until May 27, 1918, as shown by the file mark on such purported statement of facts.

The trial was concluded and the verdict and judgment given on January 26, 1918. The amended motion for new trial, first setting up misconduct of the jurors as a ground, was not filed until February 15, 1918, the day before the court's enforced adjournment, which was on February 16, 1918.

Ed Stoermer, deputy sheriff, testified to receipt of process for the jurors the day the amended motion was filed, and to a use of all the diligence possible, but to his failure to get two of the jurors, Schoenfield and Nichols, whose testimony was not obtained because of lack of time; and that with more time, two days, a week anyway, he would probably have had them both present. It appeared from the testimony of Tait, the one juror whom the defendant claims in his brief was influenced by the talk about attorney's fees to increase the verdict, that the defendant knew from this juror, through its claim or detective agent in that behalf, one Swift, two or three days after the trial of the ground relied on in the motion as to misconduct of the jury.

The statement that the ten jurors who testified admitted discussion of attorney's fees is not correct; quite an array of the jurors swore there was no discussion, only a remark as to attorney's fees which was promptly rebuked and suppressed by the foreman and not again mentioned.

The testimony quoted in appellant's brief from Gus Hilt of a figuring of attorney's fees stood isolated and alone, was inconsistent and conflicting with the testimony of several of the other jurors, and was directly contradicted by Juror Culmer. The testimony of the jurors was in direct conflict as to whether the talk of attorney's fees occurred after the jurors were all aligned, some for $20,000 and the rest for $15,000, or whether it occurred when the lowest juror, Tait, was for $10,000.

The appellant's sole contention seems to be that it must be concluded from the testimony of the juryman Tait that he was influenced to appellant's prejudice by the talk as to attorney's fees. It was established by the direct testimony of four jurors that he was in fact not influenced one whit, and that his attempt to make the contrary appear was but an afterthought.

O'Dell, one of the jurors, testified that the remark about attorney's fees did not say what amount the fee would be; that "it was not discussed pro and con"; that "we didn't any of us know what the attorney's fee would be"; that "we didn't consider the attorney's fee at all; we said we didn't know anything about what the attorney's fee would be; that wasn't none of our business what the attorney's fee was. * * * We settled that case without taking attorney's fees into consideration at all, as to what they would or would not be."

Geaccone, another juror, testified that some one said that the plaintiff would have to give so much to his lawyers if he got a judgment, but that he did not consider that at all, and asked if any of the jurors gave any more on that account, he answered, "Not a bit," and asked if it had any influence on him, he answered, "Not a bit."

Easley, another juror, asked if there was a discussion among them or mention by any of the jurors that part of plaintiff's recovery would go to the attorneys, answered that at one time there was, but he did not know "whether it was before the verdict was rendered or afterwards."

M. Epstein, juror, did not recollect hearing any remark made about attorney's fees, but did hear Juror Tait say, "If you are going to allow anything for attorney's fees, I won't give him anything."

Northrup, foreman of the jury, asked about talk as to the plaintiff having to pay the attorneys part of the amount given, testified that there was "some remark made in there about that; I was chosen foreman of the jury, and I told them not to consider that, that

they didn't have any business to consider it." That the remark was simply that plaintiff "would have to give up some attorney's fees, he didn't say how much or what"; that "we said nothing more about it." Asked if he was influenced by the remark, he answered, "I know I had judgment enough to know I could not consider that."

From the testimony of the jurors, it seems that they were never influenced one cent in their verdict by the remark about attorney's fees.

[19] The thirteenth and last assignment of error contends that the court erred in permitting the plaintiff's counsel, after having allowed Mrs. Cook to intervene as his next friend on the ground that her husband was non compos mentis, to place plaintiff upon the stand and interrogate him in the presence of the jury, claiming that the only object and purpose was an attempt to prove his insanity by himself, and to create sympathy for the plaintiff and prejudice against the defendant in the minds of the jury, and that each and all of the questions asked plaintiff were immaterial to any issue; the only proposition being that testimony not bearing on any issue in the case, and offered for the manifest purpose of unduly arousing sympathy of the jury in favor of the party offering it, and reasonably calculated to bias the jury in his favor and to prejudice the rights of the opposing party, is improper, and its admission over timely objection reversible error.

The counter proposition to this assignment is:

"Manifestly there is not the slightest semblance of error, (1) because there was nothing in the intervention of Mrs. Cook as next friend, alternatively alleging the plaintiff to be of unsound mind, to render him incompetent either to maintain his suit or to testify; (2) because the claim of an attempt on the part of plaintiff's counsel to appeal to the sympathy of the jury for plaintiff, or engender a prejudice against the defendant, is simply unsustained by anything in the record, and is without foundation in truth, and (3) because the plaintiff having been present during the trial, as much in profert off the stand as on it, and the questions and answers being of matters having not the slightest tendency to create sympathy or arouse prejudices, and being either of harmless, irrelevant matters to test memory, or of relevant matters otherwise proved, no probable injury in any event could be predicated upon the complained-of examination of plaintiff as a witness."

The suit was brought by the plaintiff, E. A. Cook, under averments of his having been made incurably, permanently, a wreck, physical and mental, from the injury, consisting of a fracture of the skull at the base, with serious hurts in his head, and in his spinal cord, and in his limbs, with the result of a serious and permanent impairment, physical and mental, with loss of initiative power of controlling normally his mind and thoughts, and with a general injury to his nervous system, leaving him a physical wreck, subject to dizziness and greatly impaired eyesight, with highly exaggerated reflexes and general weakness, but there was no intimation that he was of unsound mind in the sense of being non compos mentis.

Dr. Neuhaus, Dr. F. L. Barnes, and the plaintiff's wife, Mrs. E. A. Cook, testified to injuries as alleged, and that since the injury, the fracture of the skull at the base, the plaintiff might recall events prior in his life to the injury, but that the period of the injury and shortly before was blank, and that his thoughts since the injury were incoherent, his speech inarticulate, and his physical and mental movements uncertain and unreliable; the doctors saying that, in the case of such an injury, just such a condition was frequent and to be expected; but there was no suggestion or intimation from any of them that plaintiff was a person of unsound mind in the sense of non compos mentis, only that he had become mentally and physically impaired, as indicated, and Dr. Neuhaus, when questioned on the particular matter, answered emphatically:

"He would not be in a condition that I would call an insane person, or anything of that sort; it is mental incapacity of the kind I have indicated that I refer to."

The intervention was filed by Mrs. Cook as next friend, induced by the exception of the defendant, in effect, that it would not be otherwise protected, she alleging in the alternative by such intervention that plaintiff was of unsound mind, and otherwise reiterating and adopting the allegations and prayers of his petition, but, as stated, this intervention was never read to, or known of, by the jury.

The alternative averment of plaintiff being of unsound mind was not even his; it was Mrs. Cook's. And it is too plain for discussion that the court could not, when plaintiff was called to the stand, pronounce him incompetent to testify as a matter of law, certainly not on the only ground claimed, because Mrs. Cook had intervened for him as next friend under the alternative allegation of his being non compos mentis, particularly as the defendant itself had induced that plea as one of protection for itself.

The examination of the plaintiff touched upon no cord of sympathy or element of prejudice, but proceeded simply along the very line of testimony of the physicians, to ascertain what he knew before the accident, at the time of the accident, and subsequently to it, asking only as to the time and place of his birth, when he came to Texas, what business he became engaged in, what his earnings were, and what he knew of the accident and of the events happening just before then, and where he was educated and the extent of his education—highly relevant matters, practically all of them.

There could not have been any probable injury to the defendant from this testimony. The jury did not know of the objections made to the testimony, nor of the fact or contention calling for Mrs. Cook's intervention.

We have carefully considered the long and laborious brief of the appellant in every way possible that could be of service or benefit to the appellant, and we find no error in the trial of this case of such magnitude as to cause a reversal of this case.

Finding that the trial has been fair, and that appellant has had all advantages in any way accruing to it, the judgment of the trial court is in all things affirmed, and it is so ordered.

Affirmed.

## On Motion for Rehearing.

HIGHTOWER, C. J. In the original opinion in this case, prepared by Associate Justice Brooke, there appears this language:

"It seems to be laid down as a principle that when it has once been determined that there is evidence of negligence, the person guilty of it is equally liable for its consequences whether he could have foreseen it or not."

Appellant, in its motion for rehearing in this court, has called our attention to the above-quoted paragraph in our original opinion, and by way of criticism of that paragraph says that this court has, in effect, announced the law to be that where one is guilty of negligence which results in injury to another the person so guilty should be held to respond in damages regardless of whether such negligence was a proximate cause of such injury or not.

Taking the paragraph quoted in the original opinion alone, the criticism offered by appellant would be just and appropriate, but when the entire opinion is considered it will be manifest that the court did not intend to hold, and did not hold, that a person injured by negligence on the part of another would be entitled to recover against the person guilty of such negligence regardless of whether the injury complained of was proximately caused by such negligence. On the contrary, this court fully recognizes the rule that proof of negligence alone on the part of a defendant sought to be held responsible in damages by one injured in consequence of such negligence would not authorize a recovery by the person so injured, but in order to warrant a recovery it would have to be further shown that the negligence complained of was a proximate cause of the injury sustained. This would be true whether the negligence was admitted by the defendant or established by evidence, while being denied by the defendant sought to be held for such negligence.

[20] In this case, after properly defining "negligence," the trial court also gave to the jury the following definition of "proximate cause," to which no objection was interposed by appellant, to wit:

"'Proximate cause' of an injury is not necessarily the cause nearest in time or physical sequence, but is a cause without which the injury would not have happened, and from which that injury or some like injury might reasonably have been anticipated as a natural and probable consequence."

We think that this definition of "proximate cause" was substantially correct, and was all that was required for the protection of appellant upon the facts in this case, and, presumably, appellant's counsel were of the same opinion, otherwise they would probably have objected to the definition of "proximate cause" as given by the court.

The only question raised on the appeal in this case the solution of which we conceived to be attended with difficulty is whether the admitted negligence on the part of appellant in operating its train in the city of Houston on the occasion in question at a rate of speed greatly in excess of that permitted by the ordinances of the city could be held as a matter of law not to have been a proximate cause of the injury sustained by the appellee. We considered that question very carefully before the original opinion was prepared, and concluded that this court would not be authorized in holding as a matter of law that such admitted negligence was not a proximate cause of such injury. The jury found affirmatively that such negligence was a proximate cause, guided, presumably, in doing so by the definition of "proximate cause" as contained in the court's charge; and, after careful consideration of appellant's motion for rehearing, we are still of opinion that the issue of proximate cause in this case was one of fact for the determination of the jury, as is usually so in cases of this character, and that we would not be authorized to hold that the evidence was insufficient to sustain the jury's finding that the excessive rate of speed of appellant's train on the occasion in question was a proximate cause of appellee's injury.

It is the contention of appellant, in effect, that it was the train's presence and not its speed which caused the horse mentioned in the original opinion to become frightened and unmanageable, and that, therefore, the excessive rate of speed, although admitted to be negligence on appellant's part, really had nothing to do with causing appellee's injury.

Upon the facts as a whole, the jury found contrary to this contention, and we think that we should not disturb such finding.

We shall not further discuss the motion for rehearing, which has been considered as to every point raised, but, believing that we were correct in the original disposition made of this appeal, the motion will be overruled, and it is so ordered.